Argued and submitted July 19, resubmitted in banc December 9, 1982, affirmed January 19, reconsideration denied March 11, petition for review allowed April 6, 1983 (294 Or 682) See 295 Or 553, 668 P2d 1206 (1983)

# NORTHWESTERN PACIFIC INDEMNITY COMPANY,
*Appellant,*

*v.*

# JUNCTION CITY WATER CONTROL DISTRICT,
*Respondent.*

(No. 16 79 09299, CA A22583)

656 P2d 955

Daniel M. Holland, Eugene, argued the cause for appellant. With him on the briefs was Jaqua, Wheatley, Gallagher & Holland, P.C., Eugene.

Randall Bryson, Eugene, argued the cause for respondent. With him on the brief were Bryson & Bryson, and Calkins & Calkins, Eugene.

BUTTLER, J.

Gillette, J., dissenting.

**BUTTLER, J.**

Plaintiff, insurer, brought this action to recover legal expenses incurred in defending an action against plaintiff's insured, the State of Oregon (state), based on an alleged contract of indemnity between defendant and the state. Defendant denied that the indemnity provision was a part of its contract with the state. That issue was submitted to the jury, which returned a verdict for defendant. The dispositive issue on appeal is whether there was a jury question as to whether there was an indemnity provision in the contract between defendant and the state. We conclude that there was and affirm.

In October, 1968, defendant filed an application with the state for a permit to construct, operate and maintain an irrigation canal across state property and adjacent to state Highway 99. The application consisted of a single page printed on both sides. On the front of the form, above the space designated for the applicant's signature, was the following provision:

> "This permit is issued by the Commission subject to the terms and provisions contained herein and/or attached hereto; this permit is accepted and approved by the applicant subject to said terms and provisions."

Nothing was attached to the permit; however, on the reverse side of the form, there was printed:

> "The *appropriate* General Provisions contained in 'Oregon State Highway Commission, General Provisions for Pole Line, Buried Cable, Pipe Line, Non-commercial Signs, and Miscellaneous Operations and/or Facility Permits, December, 1966'. . . *shall apply to this permit,* and by this reference are made a part hereof. *It shall be the obligation of the applicant to obtain* said General Provisions from the Commission *and to determine which of the various provisions are applicable* before the commencement of work under said permit." (Emphasis supplied.)

A separate booklet, obtainable on request from the Highway Commission, contained the General Provisions referred to above, including the following provision:

> "A. The Applicant shall indemnify and hold harmless the State, Commission, the members thereof, and all officers, employees or agents of the State or the

Commission, against any and all damages, claims, demands, actions, causes of action, costs and expenses of whatsoever nature which may result from any injury to or the death of any persons or from the loss of, or damages to, property of any kind or nature, including the highway and highway facilities or structures, property or equipment used or owned by the State or the State Highway Department, and facilities which now or may hereafter occupy the right of way of the said highway, when such injury, death, loss or damage arises out of the construction, installation, maintenance, repair, removal, relocation, operation or use of the pole line, buried cable, pipe line, sign or miscellaneous facility covered by the permit or out of miscellaneous operation authorized by the permit."

The permit application form was originally obtained by Ray Walter, an employe of Western Engineering Consultants, which was hired by defendant to design the irrigation system. Walter testified that either he or one of the other office personnel had completed those portions of the form concerning the engineering specifications of the project. He said that he had been aware of the separate booklet containing the General Provisions, but was familiar only with those portions relating to engineering requirements. When the engineering details required by the application were completed, the form was sent to Ralph Taylor, defendant's general manager. He signed it on behalf of defendant and forwarded it to the Highway Commission. He testified that he had had no knowledge of the General Provisions contained in the separate booklet and, specifically, no knowledge of any indemnity provision contained in that booklet.

The state accepted defendant's application on October 7, 1968, at which time the application ripened into a contract. Defendant completed construction of the canal in early 1969. On August 4 of that year, a tree on state property near defendant's canal fell across the highway, killing one person and injuring two others. Actions were filed for the death and injuries against the state and defendant (among others). The complaints alleged that negligence in the location, design and construction of the canal had caused the tree to fall and injure the plaintiffs. Plaintiff here, as liability insurer for the state, tendered the state's defense to defendant; the tender was refused.

Plaintiff successfully defended the actions and then brought this action to recover attorney fees incurred under the alleged contract of indemnity between state and defendant.

Although plaintiff asserts five assignments of error, the first three relate to the trial court's ruling as a matter of law that Walter was not acting as defendant's agent in making the contract with the state and that Walter's knowledge was not imputed to defendant. Even if that ruling was in error, it is undisputed that Walter's knowledge of the General Provisions was limited to the engineering requirements contained in that booklet, and it would not have been relevant to the meaning of the contract.

In its last two assignments of error, plaintiff contends that the trial court erred in denying plaintiff's motion for a directed verdict at the close of defendant's case and in failing to give a requested jury instruction. The two contentions are closely related and will be discussed together.

Plaintiff contends that the indemnity provision was, as a matter of law, a part of the agreement between the parties and that defendant's failure to read the provision is no defense. After the trial court had denied plaintiff's motion for a directed verdict, plaintiff requested the following jury instruction:

"You are to find that if the permit was signed by the Junction City Water Control District, they are bound by its terms even if they failed to read the contract or, having read the contract, they misunderstood its terms."

Although that instruction is a correct statement of contract law under proper circumstances, *Knappenberger v. Cascade Ins. Co.,* 259 Or 392, 487 P2d 80 (1971); *Shell Oil Co. v. Boyer,* 234 Or 270, 381 P2d 494 (1963), it did not address the issue here. Defendant did not argue that its failure to read the entire permit was a defense to its enforcement but, rather, that the permit application form was so ambiguous that a reasonable person, having read its terms, would not have understood that the indemnity provision was a part of those terms. If the plaintiff is correct in

its contention that the indemnity provision was incorporated by reference as part of the agreement, then it was entitled to a directed verdict, and the instruction would be irrelevant.

However, we cannot say that there was a clear incorporation by reference here. The permit does not incorporate the General Provisions in their entirety; if it had done so, there would be no question whether the indemnity provision was part of the agreement. Instead, it incorporates only the "appropriate" provisions and leaves to the applicant to obtain the General Provisions "and to determine which of the various provisions are applicable * * *." There is no specific reference in the printed form to an indemnity provision.

Assuming that there was a valid incorporation in the agreement of some of the General Provisions, the turbid language used by the state in the printed form is ambiguous and, to the extent that its meaning depends on extrinsic evidence, the question was for the trier of fact. *Meskimen v. Larry Angell Salvage Company,* 286 Or 87, 92-93, 592 P2d 1014 (1979). If extrinsic evidence is not necessary to resolve the ambiguity, the question is one of law for the court, in which case we would resolve the ambiguity against the party who prepared the agreement. *See Union Oil Co. of Calif. v. Lull,* 220 Or 412, 419, 349 P2d 243 (1960). In either case, plaintiff was not entitled to a directed verdict. Neither was plaintiff entitled to its requested instruction. That instruction assumes that the indemnity provision was a part of the agreement, which was the principal issue in the case. There was no error.

Affirmed.

**GILLETTE, J.,** dissenting.

Apparently motivated by its irritation at the state's use of a particular form of incorporation by reference in its contracts, the majority has promulgated a new rule of law which translates roughly as "contracts of adhesion, even when they are clear, can be unenforceable if they are too long." I know of no principled basis for the adoption of such a rule and therefore decline to join in it.

The problem is what to do with a paragraph which appears on the back of a single-page application filed by defendant with the state seeking permission to construct, operate and maintain an irrigation canal across state property. That paragraph appears at page 2 of the proposed opinion, but I repeat it here for convenience:

"The *appropriate* General Provisions contained in 'Oregon State Highway Commission, General Provisions for Pole Line, Buried Cable, Pipe Line, Non-commercial Signs and Miscellaneous Operations and/or Facility Permits, December, 1966' * * * *shall apply to this permit,* and by this reference are made a part hereof. *It shall be the obligation of the applicant to obtain* said General Provisions from the Commission *and to determine which of the various provisions are applicable* before the commencement of work under said permit." (Emphasis supplied.)

Reading the provision in question on its face, it seems to be self-evident that it means the following:

1. Anyone such as defendant who files an application must obtain a copy of the "General Provisions."

2. Upon obtaining the book of General Provisions, the applicant must read them.

3. Whether he reads them or not, the applicant is bound by each of the General Provisions which by its terms is clearly applicable to the kind of project for which permission is sought.

To take a slightly different approach, the paragraph appearing on the back of the application form is, so far as I am concerned, a clear cross-reference to and incorporation of the General Provision booklet. If any ambiguity exists at all with respect to the incorporation, it exists with respect to whether or not any *particular* provision within the booklet is "appropriate;" however, there has been a sufficient incorporation by reference. The answer to the question of which terms are "appropriate" may be a purely legal one, *i.e.,* it may clear from the context of the application and permit that a particular section is applicable, or it may be a factual one, *i.e.,* there may arise a question as to whether reasonable men would have understood that a particular provision was applicable.

In this case, where the defendant was applying for permission to construct a canal, there can be no question that the indemnification provision which is in question here is "appropriate," *i.e.,* applicable. The provision obviously applies to any construction project for which an applicant has received a permit. No person reading the booklet could reasonably determine otherwise.

Of course, the requirement that the booklet be *read* may be a red herring (pun intended). It is enough, I think, that the provisions be incorporated by reference without any suggestion that a party to an application must go ahead and read them. The fact is, however, that reading the provisions is a benefit to the applicant because the applicant knows (or can learn) what his obligations and liabilities are so that he has an opportunity to obtain insurance to cover them. However, because I think the incorporation by reference is so clear, there certainly is no requirement that, *in order for the permit to be valid,* the applicant have read the General Provisions. Rather, any applicant can choose to read them or not at his peril.

Having made the above observations, I turn now to the specific language at pages 5-6 of the proposed opinion.

1. "However, we cannot say that there was a clear incorporation by reference here." This is, of course, the pivotal holding. It is dependent upon the sentences that follow it, which sentences, I believe, are analytically flawed.

2. "The permit does not incorporate the General Provisions in their entirety; if it had done so, there would be no question whether the indemnity provision was part of the agreement." No, it does not incorporate all of the provisions because, obviously, certain of them will be totally inapplicable and unrelated to a particular project. The use of the term "appropriate," seen in this context, is nothing more than a state agency recognizing the obvious.

3. "Instead, it incorporates only the 'appropriate' provisions and leaves to the applicant to obtain the 'General Provisions' and to determine which of the various provisions are applicable * * *." This is where I believe the opinion makes an analytically incorrect left turn. What is

left to the applicant to determine by a reading of the General Provisions is which of the General Provisions he wishes to seek insurance for or to otherwise guard against. In no sense is it left to the applicant to settle on what the contract provides. Rather, because there has been (contrary to the majority's conclusion) incorporation by reference, that which is applicable is to be determined by standard rules of contract law, not by the individual perception (or lack thereof) of a particular applicant.

4. "There is no mention in the printed form of an indemnity provision." That's not the point.

5. "Assuming that *there was* a valid incorporation in the agreement of some of the General Provisions, the turbid language used by the state in the printed form is ambiguous and, to the extent that its meaning depends on extrinsic evidence, the question was for the trier of fact." (Emphasis in original.) This is where the opinion gets lame. I am not at all sure what the pronoun "its" purports to refer to. Contrary to the way the sentence is written, and assuming there was a valid incorporation by reference, it seems to me self-evident that anyone examining the General Provisions would conclude that, whatever other provisions might be "appropriate," there could not be any doubt at all as to the applicability of the indemnity provision. The proposed opinion does not begin to take on this claim, much less answer it.

I submit that this case is wrongly decided and that, in fact, the plaintiff was entitled to a directed verdict.

I respectfully dissent.

Joseph, C. J., Richardson and Van Hoomissen, JJ, join in this dissent.