On respondent's petition for rehearing filed September 29, petition for rehearing denied, former opinion filed September 7 (295 Or 553, 668 P2d 1206 (1983)), modified, decision of Court of Appeals and judgment of trial court reversed, remanded to trial court for new trial February 8, 1984

## NORTHWESTERN PACIFIC INDEMNITY COMPANY,
*Respondent on Rehearing/*
*Petitioner on Review,*

*v.*

## JUNCTION CITY WATER CONTROL DISTRICT,
*Petitioner on Rehearing/*
*Respondent on Review.*

(NO. 16-79-09299, CA A22583, SC 29362)

677 P2d 671

Randall Bryson, and Calkins & Calkins and Bryson & Bryson, Eugene, for petitioner on rehearing.

Daniel M. Holland and Jaqua, Wheatley, Gallagher & Holland, P.C., Eugene, for respondent on rehearing.

LENT, J.

## LENT, J.

Defendant has filed a petition for rehearing, to which plaintiff has, pursuant to our request, filed a response. The thrust of the petition for rehearing is that even if our decision that there was an indemnity agreement between the parties was correct, plaintiff was not entitled to a directed verdict, as we held in our former opinion. *NW Pac. Indem. v. Junction City Water Dist.,* 295 Or 553, 558, 668 P2d 1206, 1209 (1983).

A short review of the progress of this case is appropriate. Plaintiff appealed to the Court of Appeals from a judgment for defendant on a jury verdict. Plaintiff stated five assignments of error. The first three were concerned with trial court rulings against plaintiff concerning the claimed agency relationship between defendant and the employee of an engineering firm. The Court of Appeals, without dissent, affirmed as to those three assignments of error. *NW Pac. Indem. v. Junction City Water Dist.,* 61 Or App 341, 345, 656 P2d 955 (1983).

The fourth assignment of error was the trial court's denial of plaintiff's motion for a directed verdict, and the fifth assignment was the trial court's refusal to instruct the jury that if the permit was signed by the defendant, it was bound by all of its terms even if "they" failed to read it or misunderstood it. The Court of Appeals treated those two assignments of error as presenting essentially the same issue. 61 Or App at 345, 656 P2d at 957. The majority of that court held that the indemnity provisions on which plaintiff relied for recovery were not validly incorporated into the permit. The dissent was of the opposite view.

Plaintiff petitioned for review, which we allowed. In our former opinion we stated that we allowed review to determine the issue of incorporation of the indemnity provisions by reference in the permit because it appeared that there were some 14,000 such permits outstanding, which might be affected. 295 Or at 557-558, 668 P2d at 1209. In its petition for rehearing in this court, defendant misconstrues the reason for that statement, contending that we did not limit review as we might have under Rule 10.15(2) of the Oregon Rules of Appellate Procedure. Defendant is correct that we did not limit review; the statement about 14,000 outstanding permits was made to show that there was an important reason for

allowing review other than for mere correction of alleged error below.

In our former opinion we agreed with the dissenters in the Court of Appeals that the indemnity provisions were validly incorporated by reference. We are still of that mind. Neither then nor now does this lead to the result we dictated in our former opinion, namely, that plaintiff was entitled to a directed verdict. Rather, we are led to consideration of plaintiff's assignments of error.

As noted above, plaintiff's fourth assignment of error was the denial of its motion for a directed verdict. In its brief in the Court of Appeals, the plaintiff failed to follow Rule 7.19(2) and (3) of the Oregon Rules of Appellate Procedure, which require:

> "(2) Each assignment of error shall be clearly and concisely stated under a separate and appropriate heading. An assignment of error must be specific and must set out verbatim the pertinent portions of the record, if it relates to a specific ruling of the court.

> "(3) The arrangement and wording of assignments of error, together with references to pages of the transcript or narrative statement, should conform to the illustrations in . Appendix F."

Appendix F catalogues illustrations for the purposes of Rule 7.19 and provides in pertinent part:

> "The court erred in denying * * * the following motion:

> "(Set forth *verbatim the motion* and the ruling of the court.)" (Emphasis added)

Rather than following the rule, plaintiff's fourth assignment of error was first set forth as follows:

> "(4) The court erred in failing to grant Plaintiff's Motion for a Directed Verdict at the close of the Defendant's case:

> > "The Court: All right. Well, my ruling will be that...the motion of the plaintiff for a directed verdict is denied. Tr. at 226."

Plaintiff did not set forth its motion at that point, verbatim or otherwise. In its brief the defendant contended before the Court of Appeals that the assignment should not be considered for the plaintiff's failure to "set out its motion for

directed verdict verbatim and did not cite transcript where such motion could be found." The Court of Appeals apparently chose not to enforce the rule, and defendant was none the loser because that court held for defendant on the merits.

In argument in its brief plaintiff characterized its motion as follows:

> "The Plaintiff moved for a directed verdict at the end of the Defendant's case. Tr. at 209. There was at this point no material issue as to the Defendant's liability for indemnity, and the Plaintiff was entitled to a directed verdict on all issues of liability."

Whether or not plaintiff intended it, the failure to set forth the motion verbatim, coupled with the just quoted characterization of the motion, tended to mislead this court as to what was the motion on which the trial court was called to rule.

The motion, most definitely, was not a motion confined to issues of liability. We now quote the motion:

> "THE COURT: * * * Let's get your motion out.
>
> "[PLAINTIFF'S COUNSEL]: All right, sir. At this time the plaintiffs [sic] would also move for a directed verdict *on all allegations* [emphasis added] in this case. And we would cite to the Court that, as a matter of law, the plaintiffs [sic] have shown that they're [sic] entitled to a directed verdict in that — and I'll take these one at a time — the parties entered into an agreement, number one, and that's shown as a matter of law by the evidence.
>
> "Two, that agreement has an indemnity clause.
>
> "Three, that indemnity clause required the defendants [sic] in the nature of an insurer, as the case law would tell us, to come in and indemnify and hold harmless the State under the allegations of the Stroda Complaint, which is in evidence. And because of that duty to hold harmless, it's been shown as a matter of law that the defendants [sic] breached that duty. The plaintiffs [sic] incurred expenses, and incurring those expenses they were reasonably approximately thirty-six thousand dollars, as specified in the Complaint. I'd like to argue those points."

There follows in the transcript eight pages of argument by plaintiff's counsel and colloquy among court and counsel for both parties concerning the scope of the indemnity agreement and whether it was incorporated in the permit before the

subject of damages is again mentioned. Plaintiff's counsel then stated:

> "And then I think the third issue then is given the contract, given the duty to indemnify, the amount of damages is reasonable in this case."

After some further colloquy about issues on liability, plaintiff's counsel concluded:

> "Okay. I guess I'll set out our entire argument. We would again contend we're entitled to a directed verdict, as a matter of law, on *all of the issues* we've raised in this case, that there was the indemnity agreement, as a matter of law. They were duty bound to indemnify and defend us, and we're entitled to *reasonable* fees." (Emphasis added)

After some six more pages of argument and colloquy between defendant's counsel and the trial court, the court ruled:

> "All right. Well, my ruling will be that the motion of the defendant for a directed verdict is denied, and that the motion of the plaintiff for directed verdict is denied."

The trial judge continued on to say that he believed as a matter of law the terms of the indemnity provisions covered the "lawsuit in question." The trial judge distinguished the cases on which the defendant relied. The trial judge then stated why he believed the indemnity provisions, if they were a part of the contract between these parties, would impose liability on the defendant:

> "First is that it's apparent from a reading of the Complaint that the plaintiff [Stroda] was basing his case on the proposition that the parties built or permitted to be built an irrigation ditch that didn't hold water, and that caused the ground around this tree to become saturated to the point where the tree fell. And it's very difficult to imagine any circumstance where the State of Oregon might have been found to be liable but the indemnitor water district not."

He stated that the negligence of the State, plaintiff's insured, would be only "secondary negligence" and that the existence of defendant's ditch "vastly increased the liability of the State." The trial judge expressed his belief that the charges in the Stroda complaint made it appear that the ditch was the instrumentality that was the basic cause of the damage to Stroda, the tree being only dangerous because of the ditch. The trial judge concluded:

"So for all these reasons, I think it's clear that if the indemnity agreement is a part of the agreement, the defendant is liable.

"Now, the only real question in my mind is, is it a jury question? I don't think under any circumstances I could rule that as a matter of law it's part of the agreement. I think it's either a jury question or [defendant's counsel] is entitled to a directed verdict on that point. But I'm inclined to think it's a jury question.

"Now, is there anything that the parties want to say that they haven't already said on that issue? *And, of course, in any event, the issue of damages will go to the jury.*" (Emphasis added)

Plaintiff's counsel went on for a few more paragraphs about his contentions that the indemnity provisions were an obligation of the defendant but said nothing about the court's statement that the issue of damages was one to be submitted to the jury. The trial judge then stated that the issue of whether the indemnity provisions were a part of the contract would be submitted to the jury and

"So we'll go to the jury on that issue and on the issue of the damages."

"Any other motions? Can we talk then about instructions and get ready to go into the arguments?"

Again, plaintiff's counsel made no response to the court's expressed belief that the matter of the amount of damages for breach of the indemnity agreement was for the jury.

During the ensuing discussion about the charge to the jury, the trial judge once more returned to the issues he would submit to the jury:

"And it puts in the question whether there was an indemnity agreement and whether it was violated, and the damages for violating them."

Counsel for plaintiff again remained silent as to the trial court's decision that damages were a question for the jury.

The transcript continues on for several more pages of colloquy on instructions and requested instructions, and only then does plaintiff's counsel have anything to say about presentation of the amount of damages to the jury:

"If I understand correctly, now the Court has ruled that the indemnity provision applies to the circumstance, and the only two issues to the jury are whether or not somehow the defendants were deceived and, therefore, the indemnity isn't part of the contract which would be their burden. And secondly, what is the amount of attorney fees. So I don't think I have any burden now for a jury question other than whether the attorney fees we requested are reasonable. * * *"

The foregoing exposition of the content of plaintiff's motion and the opportunities to modify it is long, but this writer finds it necessary to demonstrate that at no time did plaintiff's counsel ever move for a directed verdict on less than "all allegations" and "all issues" in the case. The motion actually presented to the trial court was not limited to issues of liability only, as characterized by plaintiff's brief in argument of this assignment of error. At the time of our former opinion, this writer and this court labored under the impression that plaintiff's motion was confined to issues of liability and not damages.[1]

■■■■ There was an abundance of evidence adduced by the defendant that the amount of damages claimed by the plaintiff for attorney fees was greater than reasonable. Plaintiff was, therefore, not entitled to a directed verdict, and the trial court did not err in denying the plaintiff's motion for a directed verdict.

There remains for consideration plaintiff's fifth assignment of error, in which it complains of the refusal of the court to give a requested instruction:

"You are to find that if the permit was signed by the Junction City Water Control District, they [sic] are bound by its terms even if they [sic] failed to read the contract or, having read the contract, they misunderstood its terms."

The trial judge stated that he would not give this instruction because he felt to do so would be to direct a verdict for plaintiff on the issue of liability. Rather, the court instructed the jury to the effect that if the defendant proved that the indemnity

---

[1] A motion for a directed verdict is a request to the court to rule as a matter of law that the movant is entitled to have the jury return a verdict in specified form. A motion for a directed verdict is not the proper vehicle for asking the trial court to decide as a matter of law that the movant is entitled to prevail on less than all of the elements of a claim. Rather, the claimant should proceed by proper request for a suitable peremptory instruction to the jury on each of the elements on which the claimant believes it is entitled to prevail as a matter of law.

provisions "were neither known to the defendant nor presented to the defendant in such a manner" that a reasonable person would be "led to suspect that by signing the permit application they were agreeing to the indemnity language" defendant would not be bound by the indemnity provisions.

The permit was signed by defendant by signature of its manager, Taylor. He testified that he signed it in that capacity, that he did not remember whether he completely read the front side of the document, that he did not read the obverse side, on which the incorporating language appeared, and that he was unaware of that language and of the state's booklet and its indemnity provisions. He conceded that there was nothing to prevent him from reading both sides of the document to which he affixed his signature on behalf of the defendant.

■ We addressed this issue in our former opinion, 295 Or at 557, 668 P2d at 1208, footnote 4, where in substance we held that failure to read this contract in these circumstances was not a defense to enforcement of the contract. That holding is one of the few things not questioned in the petition for rehearing, but questioned or not, we adhere to it.

■ Plaintiff's requested instruction should have been given. We cannot say that the failure to give it was harmless error, for the failure, coupled with the court's charge given on this point, allowed the jury to find the defendant was not bound by the indemnity provisions if defendant neither actually knew of their existence nor would reasonably "suspect" their existence. That error entitles plaintiff to a new trial.

■ On trial, on appeal, on review in this court and in its petition for rehearing, defendant has argued that the text of these indemnity provisions did not require it to accept the tender of defense or to reimburse plaintiff for the cost of defense. The trial court ruled to the contrary.[2] Neither the

_____

[2] During argument on both parties' respective motions for directed verdicts, the defendant made this same argument. After the trial court made its formal ruling denying both motions, the trial judge went on to state that "as a matter of law" the indemnity provisions did cover the matters alleged in the Stroda and companion cases complaints. He stated his reasons for that holding over the next four pages of the transcript and concluded:

"I think it's clear that if the indemnity agreement is a part of the agreement, the defendant is liable."

majority nor the dissent in the Court of Appeals mentioned the issue, but for the reasons expressed in the footnote, we believe they did not accept defendant's argument in this respect.[3]

This court also, in our former opinion, rejected this argument of the defendant. See footnote 3, 295 Or App at 556, 668 P2d at 1208. Defendant, in its petition for rehearing, vigorously argues that we were in error in that respect. The text is set forth in our former opinion, but we repeat it here for ease of consideration:

> "A. The Applicant shall indemnify and hold harmless the State, Commission, * * * against any and all damages, claims, demands, actions, causes of action, costs and expenses of whatsoever nature which may result from any injury to or the death of any persons or from the loss of, or damages to, property of any kind or nature, * * * *when such injury,* death, loss or damage *arises* out of the construction, installation, maintenance, repair, removal, relocation, operation or use of the pole line, buried cable, pipe line, sign or miscellaneous facility covered by the permit * * *." (Emphasis added)

Defendant's argument is that its duties arise only "when" injury, death, etc., arise out of its activities under the permit. Defendant argues that plaintiff produced no evidence

---

Thereafter, the trial judge charged the jury in pertinent part:

"If the indemnity language was a part of the agreement, then the defendant did have a contractual duty to defend the cases filed against the State of Oregon."

Defendant took no exception to that instruction.

Quite understandably, defendant did not appeal from the judgment in its favor. Without appealing or cross-appealing, however, defendant could have challenged the trial court's adverse ruling in this particular in its answering brief. *See Wiggins v. Barrett & Associates,* 295 Or 679, 698, 669 P2d 1132 (1983), and *Artman v. Ray,* 263 Or 529, 501 P2d 63, 502 P2d 1376 (1972). It did not do so. It did, however, make the same argument such a challenge would have entailed, in responding to plaintiff's fourth and fifth assignments of error. In these circumstances, we are not prepared to hold that defendant is foreclosed from this argument by its failure to follow the procedure suggested in *Artman v. Ray, supra.*

[3] Given the majority's position, it had no reason to discuss the issue. On the other hand, had the majority been of the mind that the indemnity provisions, as a matter of law, did not bind defendant to defend or to reimburse, the decision and opinion could have been predicated on that basis and the matter of incorporation, on which the court split, could have been avoided. We must assume that the dissenters did not agree with defendant's argument concerning the effect of the indemnification text, for if they had, their decision would have been to concur, not to dissent.

that injuries or the death in the Stroda and companion cases, upon which the tender of defense was made, arose out of defendant's activities under the permit. Neither the trial court nor this court so reads that text.

The complaints against the state which were tendered to defendant for defense contained allegations that injury and death to those plaintiffs arose from the construction, installation, operation and use of the irrigation ditch. The very thrust of those complaints was that the installation of the ditch resulted in water being present in such quantity and for so long a period of time as to loosen the roots of the tree that stood on the state's property adjoining the ditch and thus caused its fall and the resulting injuries to those plaintiffs on the highway. Those complaints were in evidence, and as the trial court well put it:

> "[I]t's apparent from a reading of the Complaint that the plaintiff was basing his case on the proposition that the parties built or permitted to be built an irrigation ditch that didn't hold water, and that caused the ground around this tree to become saturated to the point where the tree fell. And it's very difficult to imagine any circumstance where the State of Oregon might have been found to be liable but the indemnitor water district not.
>
> "* * * * *
>
> "So as I see it, the existence of the ditch vastly increased the liability of the State. And the ditch, if not the tree, was primarily under the control of the district. And I see the ditch as the instrumentality that the plaintiff is alleging was the basic cause of the damage. And the tree is only claimed to have become dangerous because of the ditch.
>
> "* * * * *
>
> "Further, it's hard to see if the indemnity agreement doesn't cover the situation, what does it cover? It's hard to see any action being brought against the State of Oregon because of the presence of the ditch, that wouldn't in some manner allege negligence on the part of the State. At least I haven't been able to come up with any, unless it would be in connection with the allegation of a nuisance, and that was contained in this Complaint. So even if the Complaint is interpreted as not seeking any recovery from the State, except that which is based upon the State's negligence, the negligence charged is its failure to take notice of the increased possibility of dangerousness of its trees because of the presence of a leaky

irrigation system. And that, I think, they had every right to seek indemnification agreement concerning it. And it could reasonably be interpreted to be reasonably entered into, contemplated by the parties."

Those were the reasons which led the trial judge to rule and instruct the jury as set forth in footnote 1, *supra,* to which defendant saved no exception.

■      The text of the indemnity provisions requires the defendant district not only to indemnify but to hold the State harmless from claims and causes and "costs and expenses of whatsoever nature" which may result from death or injury "when" the death or injury arises out of the defendant's activities under the permit. The State obviously cannot be held harmless, as distinguished from indemnified, unless the costs and expenses of defending against claims arising out of the installation and operation of the irrigation ditch must be shouldered by the defendant. It is the allegations of the Stroda and companion cases complaints which gave rise to the obligation to hold the state harmless from the costs and expenses necessary to defend against those claims, demands and causes.

Finally, the defendant is correct in its contention in the petition for rehearing that footnote 6 and the accompanying text of our former opinion was not correct. That portion of the opinion is withdrawn.

The decision of the Court of Appeals and the judgment of the trial court are reversed, and this cause is remanded for new trial.