Argued and submitted November 29, 1993, reversed and remanded in part and otherwise affirmed on appeal; affirmed on cross-appeal September 7, 1994

Leo MITCHELL
and Margaret Mitchell,
*Appellants - Cross-Respondents,*

*v.*

PACIFIC FIRST BANK,
a Federal Savings Bank,
*Respondent - Cross-Appellant.*

(90C-11087; CA A77581)

880 P2d 490

W. Wallace Ogdahl argued the cause for appellants - cross-respondents. On the briefs were Kim E. Hoyt and Ferder, Ogdahl, Brandt & Casebeer.

Harold D. Gillis argued the cause and filed the briefs for respondent - cross-appellant.

Before Deits, Presiding Judge, and Riggs and Leeson,* Judges.

DEITS, P. J.

Riggs, J., dissenting.

---

* Leeson, J., *vice* Durham, J.

DEITS, P. J.

Plaintiffs, prevailing parties in a breach of contract claim, appeal the trial court's denial of their motion for attorney fees. Defendant cross-appeals the denial of its motion for a directed verdict. We reverse on the appeal and affirm on the cross-appeal.

In 1984, plaintiffs purchased property for $39,500. They paid $5,000 down and obtained a $34,500 loan from American Home Savings (AHS). The loan was secured by a trust deed on the property. Beginning in 1985, plaintiffs were unable to make some payments on the loan due to "extreme hardship" involving family medical problems. AHS entered into "work-out agreements" with plaintiffs, allowing them to make additional payments to cure the default. Plaintiffs completed the work-out agreements, including the payment of late fees that had accrued prior to each work-out agreement. Plaintiffs paid the late fees charged by AHS as part of the work-out agreements, even though plaintiffs understood the agreements to be a waiver of late fees. According to defendant, AHS agreed to waive only late fees that accrued *during* the work-out agreements.

In February, 1989, AHS told plaintiffs of a delinquency of approximately $1,300 on the loan. Plaintiffs disputed the amount of the delinquency. They told AHS that not all of their payments had been properly credited to the account. AHS agreed to audit their account again and later told plaintiffs that, if they paid $860, the loan would be transferred in good standing to defendant, AHS's successor in interest. Plaintiffs paid $860 to AHS, bringing them current until, at least, March 1, 1989.

However, plaintiffs received a notice of default on March 16, 1989, which said that they owed $1,784, with $198.07 and $17.01 in late charges. Plaintiffs contacted AHS and were informed that their loan had been transferred to defendant. Plaintiffs then contacted defendant and spoke with an employee, Fleck. Plaintiffs explained to Fleck that they did not owe $1,700. On March 29, 1989, Fleck sent plaintiffs a letter indicating that their account was delinquent $1,586.59, because of missed payments from December, 1988, through March, 1989.

Plaintiffs received their first coupon from defendant for the April, 1989, payment. The coupon requested a payment of $430 and did not indicate an arrearage. They paid the April payment. On April 17, 1989, plaintiffs received another notice of default, which said that they owed a total of $1,802.07, with a past due amount of $1,586.59, a late charge of $17.41 and a total late charge of $215.48. It was stated in an accompanying letter that: "This letter acknowledges receipt of and thank you for your payment which was credited to your loan on April 6. As of this date, $1,586.59 remains owing, which represents the January through April payments."

Plaintiffs testified that they understood that the $860 payment to AHS, defendant's predecessor in interest, in March, 1989, had fully satisfied any delinquency on the account, including late fees, and that they had made the April, 1989, payment. Plaintiffs told defendant that they had made the payments for January through April, 1989. Plaintiff Margaret Mitchell testified:

"[Yvonne Nehl, who worked for defendant] told me that the records that they had got[ten] from [AHS] were in such a mess that she was unable to determine what had been paid, when, or where, and so they really could not figure out where the account was. She said that there was nobody from [AHS] that had come to [defendant] from—that they could check with the records on or talk to them about it, and so she said they were absolutely unable to figure out what had been paid or where because the records were in such a mess."

When plaintiffs tendered their payment in May, 1989, defendant refused to accept it, claiming that it was insufficient. Defendant also returned their April, 1989, payment.

After those payments were returned, plaintiffs advised defendant that they were current on their loan and that the payments that defendant claimed were past due had been made to AHS. Plaintiffs also told defendant that AHS had agreed to waive late fees and that part of the alleged delinquency may have been late fees that should have been waived. Defendant, however, continued to refuse plaintiffs' monthly payments on the ground that the payments were insufficient to cure the default. Defendant then issued a notice of intent to foreclose non-judicially. Plaintiffs retained a lawyer and opened an account in which they deposited

amounts equal to their monthly loan payments. After the notice of sale, plaintiffs tendered various amounts of money to defendant, including $6,000 immediately before the non-judicial foreclosure. Defendant refused the tender and maintained that plaintiffs owed $7,800 on the loan. Plaintiffs filed a motion to enjoin defendants from foreclosing on the property. However, by the time that motion was heard by the trial court, the property had been sold.

Plaintiffs filed this action against defendant, which consisted of three claims for relief, breach of contract, an accounting and wrongful foreclosure. Before the case was submitted to the jury, defendant moved for a directed verdict on each of plaintiffs' three claims for relief. The trial court granted a directed verdict for defendant on plaintiffs' claims for an accounting and for wrongful foreclosure,[1] but denied a directed verdict on plaintiffs' breach of contract claim. The jury returned a verdict in plaintiffs' favor. After the jury returned the verdict, plaintiffs moved to amend their pleadings to clarify the source of their request for attorney fees. The motion was denied. Plaintiffs then moved for attorney fees, which was also denied.

On appeal, plaintiffs seek review of the trial court's denial of its motions to amend the pleadings and for attorney fees. Defendant cross-appeals the denial of its motion for a directed verdict on plaintiffs' breach of contract claim. We first address the issues raised by defendant's cross-appeal.

■ Defendant moved for a directed verdict on plaintiffs' breach of contract claim on three grounds. First, defendant argued that Count II of plaintiffs' breach of contract claim is "actually a defense" parlayed into a cause of action. According to defendant, estoppel or waiver cannot be used "to support or assert a claim." However, plaintiffs' cause of action is not estoppel or waiver; it is breach of contract. Here, plaintiffs allege that defendant breached the contract by rejecting their payments, declaring a default and accelerating the loan. Defendant responds that its actions were proper because plaintiffs were in default and their payments did not include past due amounts. Plaintiffs assert that they were not in default and that, even if they were in default, defendant

---

[1] Plaintiffs do not assign as error the trial court's dismissal of those two claims.

waived the "time of the essence" and late fees provision of the contract. Accordingly, plaintiffs may use the theory of waiver in support of their breach of contract claim. *See, e.g., Abercrombie v. Hayden Corp.*, 122 Or App 355, 858 P2d 152 (1993), *rev allowed* 318 Or 325 (1994).[2]

■ Defendant next argues that a directed verdict should have been entered against plaintiffs on their breach of contract claim, because the claim was premature. Defendant contends that plaintiffs'

> "complaint was filed while a non-judicial foreclosure of a trust deed against plaintiffs' property was underway, but not completed by a public auction. The first claim is premised on a claim for damages that will arise if the foreclosure sale later occurs. The wrongful declaration of default that prevents the plaintiffs from paying what they say they owe may excuse plaintiffs from further compliance, but does not create a claim for damages for breach of contract."

Plaintiffs filed a complaint in June, 1990, alleging that defendant breached their contract by rejecting their payments beginning in May, 1989, declaring a default and accelerating the loan. Plaintiffs sought damages, in the event that the property was sold, amounting to the loss of the value of the property foreclosed minus the balance of the loan agreement. All of the elements of a cause of action for breach of contract had accrued at the time that plaintiffs filed suit, even though the foreclosure sale had not been completed. Plaintiffs were not required to file a supplemental complaint, because they were not seeking relief on the basis of events that occurred

---

[2] Contrary to the dissent's assertion, the plaintiffs in *Abercrombie* did not use "estoppel and waiver to defend their modification theory from the defendant's attacks." 130 Or App at 79. As we clearly explained in *Abercrombie*:

> "Plaintiffs proceeded on three *alternative* theories: That defendant waived the previously specified time of performance, that defendant is estopped by the extension to claim otherwise and that the extension constitutes a modification of the original closing date provisions and the earlier written extensions." 122 Or App at 358. (Emphasis supplied.)

In *Abercrombie*, we also noted that, as here, the defendant's argument that the modification was not supported by consideration did not affect the plaintiffs' alternative theories of estoppel and waiver. We said that whether plaintiffs had given consideration for the modification

> "may not have any bearing on the waiver and estoppel theories. We nevertheless address it, because we are unable to tell from the verdict whether the jury found for plaintiffs on their modification theory rather than on their waiver or estoppel theories." 122 Or App at 360 n 2.

after the original complaint was filed. Defendant's argument that plaintiffs' breach of contract claim should have been dismissed because it was premature is unpersuasive.

 Finally, defendant argues that it should have been granted a directed verdict on plaintiffs' breach of contract claim, because there was no evidence of consideration to support a modification of the contract. Plaintiffs alleged that they were current on the loan agreement when defendant rejected their May, 1989, payment. They also alleged that, if they were not current, the parties had modified the underlying loan agreement or, in the alternative, that defendant waived the "time of the essence" and late fees provision in the loan agreement. Plaintiffs' pleadings are somewhat unclear because they allege oral modifications of the contract in both Counts I and II of their breach of contract claim. However, it is clear from the jury instructions that all three theories, full performance, modification and waiver,[3] were tried by the parties as alternative grounds for relief.

ORCP 23B provides, in part:

> "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; *but failure so to amend does not affect the result of the trial of these issues*." (Emphasis supplied.)

Without objection, plaintiffs presented evidence that they had fully performed under the terms of the contract[4] and

---

[3] Plaintiffs also presented evidence that may have supported a waiver by estoppel. As one court has explained, waiver by estoppel occurs when a party is misled to the party's prejudice into an honest and reasonable belief that waiver is intended. *See Hale Contracting v. United N.M. Bank*, 110 NM 712, 799 P2d 581 (1990) (discussing the doctrines of waiver, modification and estoppel).

[4] The dissent argues that: "The jury could not have found that plaintiffs fully performed under the *original* loan agreement, because plaintiffs did not assert that theory in their pleadings, at trial or on appeal." 130 Or App at 79. (Emphasis in original.) To the contrary is plaintiff Margaret Mitchell's testimony:

> "[Plaintiff]: [Wanda Reeves of ASL] had told me that she had discovered in the audit of my account, going over my checks and so on, that I was — that if I paid $860.00 at that point, that I would be totally current. * * * She said that there was a transfer to [defendant] taking place right at that time and she wanted my

that, if they had not fully performed, their performance was excused because defendant "waived" its right to strictly enforce the terms of the contract.[5] "[A]fter judgment the variance between pleading and proof is waived unless timely raised." *Elsasser v. M.P.R. Construction Corp.*, 39 Or App 715, 722, 593 P2d 1218, *rev den* 287 Or 1 (1979).

■ Here, the trial court instructed the jury on the issues of waiver and full performance, without objection, as follows:

> account * * * to be completely current when they made the transfer so she could transfer it in good standing, and so I agreed with her to pay the $860.00, which I did.
>
> "[Plaintiffs' counsel]: Did that—was that consistent with your understanding as to what you owed in February, 1989?
>
> "[Plaintiff]: I agreed with that. A later audit of my account in fact showed that that's exactly what I owed, $826.98.
>
> "* * * * *
>
> "[Plaintiff]: * * * I just was paying $860.00 so that I would be totally current when they transferred the account.
>
> "[Plaintiffs' counsel]: Okay. And [Wanda Reeves] had told you that that would make you current?
>
> "[Plaintiff]: Yes, she had. She had said that would make me current.
>
> "* * * * *
>
> "[Plaintiffs' counsel]: After you had paid the $860.00 which you both felt brought you current, at least to March 1st, 1989?
>
> "[Plaintiff]: That's correct."

Contrary to the dissent's view, plaintiffs' accountant did not establish that plaintiffs were in default at the time that defendant rejected their May, 1989, payment. Plaintiffs' accountant testified that, based on plaintiffs' records for the time period through April, 1989, plaintiffs had underpaid on their account by $826.98. Plaintiffs testified that their $860.00 payment to ASL on March 1, 1989, brought them current on the loan. Plaintiff said that she thought the $860 payment was more than she owed, according to her records. However, she did not think that the difference was enough to fight over, because she wanted her loan to be transferred in good standing. Plaintiff said that a later audit of the account showed that she had been in arrears by $826.98 at the time that she made the $860 payment. Reading the record in its entirety, it is quite clear that plaintiffs did not offer the accountant's testimony for the purpose of establishing that they were in default when defendant rejected their payment. Rather, they offered the accountant's testimony to establish that, when plaintiffs paid ASL $860, that payment fully satisfied their $826.98 delinquency. There would be no reason for plaintiffs to prove that they were delinquent when defendant rejected their payment, and it is highly unlikely that they would have offered the testimony for that purpose.

---

[5] "Under general contract law, a party to a written contract can waive a provision of that contract by conduct or by oral representation * * *." *Moore v. Mutual of Enumclaw Ins. Co.*, 317 Or 235, 241, 855 P2d 626 (1993).

"Now, to get a little more specifically into this case, this is a breach of contract case. Plaintiff alleges that the defendant violated its obligations under the loan and the trust deed arrangement between the parties. Plaintiff says we paid and performed our part of the contract; or to the extent that we didn't, we were excused by the defendant or the defendant's actions and words. And that at that time then, the defendant wrongfully breached the contract by refusing payments, by declaring the balance due and payable, and by foreclosure.

"* * * * *

"In this case, plaintiffs must prove in order to prevail that they either fully performed their contract up to the time of the alleged breach by the defendant, or that they were excused from that performance. And that the defendant breached the agreement by rejecting payments and declaring a default and foreclosure. And that the plaintiff suffered damages as a result of that alleged breach of contract by the defendant.

"* * * * *

"Also, there's a principle in contract law to the effect that a party may waive or forgo or give up or excuse—and I use the term excuse—strict performance by the other party. And they can do that expressly or they can do it impliedly by the way they act, their conduct, words, whatnot.

"Again, this has to be determined objectively. That is, from a point of view of a reasonable party, you have to look at the conduct, actions, words of a party, and say, did they forgive or waive or give up the performance of this obligation by the other side. If you can objectively say they did, then the contract to that extent may be waived or modified.[6]

"Now, one specific application of that is a principle that says when a contract says certain things are to be done at certain times, a lender—for example, the payments under the note in this case, under that circumstance, a lender who through a consistent practice of accepting late payments has permitted the purchaser to rely on this course of conduct as a reasonable purchaser or payer, that if that has happened, then in order to strictly enforce the contract thereafter, the lender must give reasonable notice that they will thereafter insist on strict performance of the contract provision.

---

[6] The trial court's instruction confused the doctrines of waiver and modification, because modification requires consideration whereas waiver does not. However, although that instruction was misleading, defendant did not except to it.

"And they also must give the party a reasonable opportunity to bring the payments up to date before being entitled to foreclose. And this is true even though the agreement may contain a non-waiver provision. That provision itself can be · waived by the conduct of the lender.

"Now, the general rule of law is that a party who complains that the other party is in breach of a contract must themselves prove performance of the contract on their part up to that point, or a legal excuse for not doing so. * * *

"So the issues in this case are: What was the contract between the parties. And the allegation is: Was there a breach of the obligations and agreements under the contract between the parties by the defendant. So one of the issues is, at the time of the alleged breach by the defendant, *were the plaintiffs fully performing or current on their obligations; or was their performance excused in some fashion by specific actions or words of the defendant.*

"And if the plaintiffs were entitled to performance by the defendant at that time, did the defendant breach the contract by rejecting payment and declaring the balance due and proceeding on the foreclosure; that is, did the defendant violate its obligations to the plaintiffs under the terms of the loan and the trust deed agreement." (Emphasis supplied.)

■ Even if we were to conclude that plaintiffs presented no evidence of consideration to support a modification of the contract, defendant would not have been entitled to a directed verdict on plaintiffs' breach of contract claim, because modification was not the only theory on which plaintiffs proceeded. In its motion for a directed verdict, defendant did not argue that there was insufficient evidence in the record to support a finding that plaintiffs had fully performed under the terms of the loan agreement. Neither did defendant argue that the evidence was insufficient to support a finding that it waived the "time of the essence" and late fees provision of the contract.

■ The jury returned a verdict in plaintiffs' favor, and it could have done so without finding a contract modification. It could have found that plaintiffs had fully performed under the contract, or to the extent that they did not fully perform, that their performance was excused because defendant, through its conduct and the conduct of its predecessor,

"waived" its right to strictly enforce the terms of the contract.[7] Therefore, it would have been error for the trial court to have granted defendant's motion for a directed verdict on plaintiffs' *entire* breach of contract claim. Defendant could have moved to strike the allegations involving a contract modification. As the court explained in *NW Pac. Indem. v. Junction City Water Dist.*, 296 Or 365, 372 n 1, 677 P2d 671 (1984):

"A motion for a directed verdict is a request to the court to rule as a matter of law that the movant is entitled to have the jury return a verdict in specified form. A motion for a directed verdict is not the proper vehicle for asking the court to decide as a matter of law that the movant is entitled to prevail on less than all of the elements of a claim. Rather, the claimant should proceed by proper request for a suitable peremptory instruction to the jury on each of the elements on which the claimant believes it is entitled to prevail as a matter of law."

Here, plaintiffs' theories of recovery for breach of contract involved more than a modification of the contract. Because of defendant's failure to argue that it was entitled to a directed verdict on each of those theories, its motion for a directed verdict on plaintiffs' *entire* breach of contract claim was improper, and the trial court did not err in denying it.

Defendant next assigns as error the trial court's failure to give a requested jury instruction:

"The parties to a contract may modify it or amend it from time to time by mutual consent. To be valid there must be new consideration and the parties must agree upon what the modification amendment is. The term 'consideration' means either (1) an exchange of promises or (2) a benefit conferred

---

[7] Waiver, estoppel and modification are distinct doctrines that should be separately analyzed. A modification requires offer and acceptance and consideration (or a statutory equivalent of consideration); estoppel does not require consideration to be binding, but it does require detrimental reliance; a waiver, however, is ordinarily unilateral and does not require consideration or injurious reliance to be binding. Waiver is a limited exception to the doctrine of consideration, because a party may only waive an immaterial part of the mutually agreed upon exchange. The parties to a modified contract may not terminate the modification except by mutual agreement; however, even if there has been an effective waiver, the party waiving may withdraw the waiver prospectively if to do so would not be unjust. *See, e.g., Stinemeyer v. Wesco Farms, Inc.*, 260 Or 109, 487 P2d 65 (1971); *see also* 3A Corbin, *Contracts* § 754 n 13 (1960), and cases cited therein.

on one party and some detriment or responsibility under-
taken by the other party. A promise to do what a party is
already legally obligated to do is not consideration."

The trial court gave this instruction:

"Now, in addition to that, once you have an initial agree-
ment between parties, the parties to a contract may modify it
or amend it from time to time by mutual consent. To be valid,
there must be new consideration; that is, something of value
given or some detriment undertaken by the other party. And
the parties must agree on what the modification or the
amendment is. In other words, there has to be what's called a
meeting of the minds."

According to defendant, the difference between the requested
instruction and that given by the court is the absence of the
last sentence in the requested instruction: "A promise to do
what a party is already legally obligated to do is not
consideration."

However, in instructing the jury on consideration,
the court explained:

"'To be enforceable, a promise in a contract, an agreement
by somebody to do something must have consideration. Now,
consideration is defined by law meaning either an exchange
of promises or a benefit conferred by one party and some
detriment or responsibility undertaken by the other party. *A
promise to do what a party is already legally obligated to do is
not consideration.*" (Emphasis supplied.)

We conclude that the court's instructions to the jury ade-
quately covered the subject matter of the requested instruc-
tion. Therefore, the court did not err in refusing to give
defendant's requested instruction. *See State v. Tucker*, 315
Or 321, 332, 845 P2d 904 (1993); *see also Laubach v. Indus-
trial Indemnity Co.*, 286 Or 217, 225, 593 P2d 1146 (1979).

 On appeal, plaintiffs argue that the trial court erred
in denying their motions to amend their pleadings and for
attorney fees. As a general rule, a party has no right to recover
attorney fees from an opponent unless a statute or contract
confers that right. *Mattiza v. Foster*, 311 Or 1, 4, 803 P2d 723
(1990). However, if a contract provides that the prevailing
party is entitled to reasonable attorney fees, and if there is a
prevailing party, the court *must* award that party reasonable
attorney fees. *Ladum v. City of Reedsport*, 83 Or App 666,

669, 733 P2d 66 (1987). Here, the parties' loan agreement contained the following provision for attorney fees:

"In the event of any default in the payment of this Note and if suit is brought hereon, the holder hereof shall be entitled to collect in such proceeding all reasonable costs and expenses of suit and any appeal thereof including, but not limited to, reasonable attorney's fees."

ORS 20.096(1) provides:

"In any action or suit on a contract, where such contract specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the prevailing party, whether that party is the party specified in the contract or not, at trial or on appeal, shall be entitled to reasonable attorney fees in addition to costs and disbursements."

 Defendant argues that the trial court properly denied plaintiffs' motion for attorney fees, because, under ORCP 68, they failed to plead adequately their entitlement to attorney fees. In *Page and Page*, 103 Or App 431, 434, 797 P2d 408 (1990), we said:

"It is not necessary to specify the statutory basis of a request for fees when the facts asserted would provide a basis for an award of fees, the parties have fairly been alerted that attorney fees would be sought and no prejudice would result."

In Counts I and II of their breach of contract claim, plaintiffs asserted their right to attorney fees. In Count II, plaintiffs specifically alleged that they were entitled to attorney fees "[p]ursuant to the terms of the contract." Plaintiffs did not refer to ORS 20.096(1) in their pleadings. However, they did request attorney fees, alerting defendant that fees would be sought, and they alleged facts that would entitle them to attorney fees under ORS 20.096(1). Defendant argues that it was prejudiced by plaintiffs' failure to allege specifically the source of their request for attorney fees, because it understood plaintiffs' breach of contract claim to be premised on a modification of the agreement. According to defendant, it was unable to determine whether the modified contract provided for attorney fees. However, as discussed above, plaintiffs' breach of contract claim was not premised solely on a modification of the contract. Defendant was aware of the contract

provision in the loan agreement providing for attorney fees. In their complaint, plaintiffs sought attorney fees "pursuant to the terms of the contract." On these facts, defendant could not have been prejudiced by plaintiffs' failure to allege a statutory basis for their request for attorney fees. We conclude that plaintiffs adequately pleaded their entitlement to attorney fees. Because, under the contract provision, an award of attorney fees is mandatory, the trial court erred in denying plaintiffs' motion for attorney fees.

On appeal, reversed and remanded for a determination of attorney fees pursuant to ORCP 68, and otherwise affirmed; affirmed on cross-appeal.

**RIGGS, J.,** dissenting.

I believe defendant was entitled to a directed verdict on plaintiffs' breach of contract claim. In its effort to uphold an untenable jury verdict, the majority opinion ignores pertinent cases and basic principles of contract law. It upholds the verdict with a theory of recovery that was never asserted by the plaintiffs. It also permits plaintiffs to transform equitable estoppel into a cause of action for money damages. The opinion has potential to mislead bench and bar.

Plaintiffs proceeded to trial on the theory that the bank agreed to an oral modification of the loan agreement and that the bank breached the loan agreement *as modified*. The modification theory failed as a matter of law, because there was no consideration, but was nevertheless submitted to the jury. The jury returned a general verdict. According to the majority:

> "The jury returned a verdict in plaintiffs' favor, and it could have done so without finding a contract modification. It could have found that plaintiffs had fully performed under the contract, or to the extent that they did not fully perform, that their performance was excused because defendant, through its conduct and the conduct of its predecessor, 'waived' its right to strictly enforce the terms of the contract." 130 Or App at 74- 75.

For the reasons set out below, we cannot uphold the jury verdict for either of the reasons that the majority proposes.

The jury could not have found that plaintiffs fully performed under the *original* loan agreement, because plaintiffs did not assert that theory in their pleadings, at trial or on appeal. It is not our role to invent new theories of recovery for parties. Even assuming that an appellate court can invent a new theory of recovery for plaintiffs, that theory is not supported by the record. Plaintiffs' own accountant testified that, in April, 1989, when the bank rejected plaintiffs' tender of $430, plaintiffs were $827 in arrears. The majority's assertion that the jury could have found that plaintiffs were current under the terms of the original agreement must be rejected.

The majority also asserts that the jury could have found that defendant breached the contract when it enforced the time-essence clause it had "waived." As we explained in *Daly v. Fitch*, 70 Or App 18, 687 P2d 1124 (1984), "estoppel" is a more accurate term.

> "The parties speak in terms of 'waiver' of the time-essence clause. Most of the relevant cases do also. Several cases suggest that estoppel is a more appropriate concept. Waiver refers to the *intentional* relinquishment of a known right, claim or privilege. Estoppel is an equitable principal that precludes someone from exercising a right to another's detriment if the right holder, through words or conduct, has led the other to believe that the right would not be exercised. The effect of accepting late payments on a seller's right to exercise a time-essence clause is usually more properly put in terms of estoppel rather than waiver." 70 Or App at 21 n 2. (Citations omitted.)

Estoppel is an equitable defense, and can be used to prevent foreclosure. It is not a cause of action. *Howell v. Oregonian Publishing Co.*, 82 Or App 241, 247, 728 P2d 106 (1986), *mod* 85 Or App 84, 735 P2d 659, *rev den* 303 Or 699, 740 P2d 1212 (1987). *Abercrombie v. Hayden Corp.*, 122 Or App 355, 858 P2d 152 (1993), *rev allowed* 318 Or 325 (1994), is not to the contrary. In *Abercrombie*, the plaintiffs gave new consideration for the modification of a contract. They used estoppel and waiver to defend their modification theory from the defendant's attacks.

In contrast to *Abercrombie*, the majority opinion in this case effectively treats "waiver," actually estoppel, as a

cause of action. According to the majority, the bank enforced a provision it waived and, even though there was no consideration to support the waiver and no reliance on the waiver, the enforcement of the waived provision was nevertheless a breach of contract for which money damages are available. That theory of recovery is an unprecedented departure from previous case law, and we should reject it.

Defendant was entitled to a directed verdict because no theory permits us to uphold the jury verdict in favor of plaintiffs' breach of contract claim.

I respectfully dissent.