Argued February 28, affirmed May 1, 1957

## LAKEVIEW DRILLING CO. *v.* STARK ET AL
### 310 P. 2d 627

*Robert L. Welch,* Lakeview, argued the cause for appellant. With him on the briefs were Herbert P. Welch, Lakeview, and Harry T. Zucker, New York.

*Theodore R. Conn,* Lakeview, argued the cause and filed a brief for respondent G. D. Stockburger.

*Forrest E. Cooper,* Lakeview, argued the cause and filed a brief for respondent Ralph W. Stark.

Before PERRY, Chief Justice, and ROSSMAN, BRAND and McALLISTER, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff from a judgment order of the circuit court, which dismissed the plaintiff's complaint after the court had transferred the cause to the law side, ruled that the complaint failed to state a cause of action, ordered the plaintiff to amend, and the plaintiff had declined to amend.

The proceeding out of which this appeal arose began as a suit to foreclose a lien claimed for the drilling of a well on property in Lake county. Plaintiff, Lakeview Drilling Company, Inc., is a corporation. Lyell W. Stark, Ralph W. Stark, G. D. Stockburger, John Doe and Richard Roe are named as defendants, but only Ralph Stark and Stockburger were served and defended the suit.

At the close of plaintiff's case, defendants moved for transfer of the cause to the law side of the court. The motion was granted and, plaintiff having failed to amend its complaint to state a cause of action, the court dismissed the complaint and ordered the lien dissolved. Plaintiff appeals from the judgment entered thereon.

Early in October, 1952, Harry T. Zucker, a New York attorney, was in Lakeview for the purpose of considering land transactions. Meetings were held which were attended by Ralph Stark, Tom Farrell, a Lakeview attorney, Charles Stone, a well driller, and George Bigar and Michel Porges, associates of Zucker. During the course of the discussions, purchase of land owned by Stockburger, upon which the well in question was subsequently drilled, was considered. Zucker felt

that the price was too high and nothing further was done at that time.

The Lakeview Drilling Company, Inc., was incorporated October 10, 1952. Zucker became its president. Between October 18 and 22, 1952, he was again in Lakeview and had further conversations with Ralph Stark.

November 25, 1952, Ralph Stark bought from Stockburger a 90-day option to purchase the Stockburger property. The two paragraphs of that instrument pertinent to this litigation follow:

"The purchase price for said land shall be $40,000.00, which shall in case said option is exercised be paid as follows: $12,000.00 down, with notes and mortgage for the balance of $28,000.00 payable in ten (10) equal annual installments, bearing 4 per cent interest on all deferred balances, payable at the time of installment due dates annually. Seller reserves the right to purchase at cost 800 feet of casing in well, if so much be set therein, in case this option is not exercised.

"It is further agreed between the parties hereto that Ralph W. Stark shall have the right, during the 90 day period of this option, to drill upon said property one or more wells for the purpose of developing gas, oil, and/or water, doing such work in a proper manner, and without cost or obligation to, and without liability on the part of seller herein. Seller shall pick the location for the first well, which said Ralph W. Stark agrees to have drilled within 90 days from the date hereof."

There is no evidence that Ralph Stark exercised the option nor that it was extended beyond the 90-day period which would have expired on the 23rd of February, 1953.

December, 1952, and January, 1953, were marked by an exchange of correspondence between Ralph Stark

in Lakeview and Zucker in New York. The letters disclose attempts by Ralph to interest plaintiff, through its president, in the drilling of a well on the Stockburger property. Zucker offered terms by letter of December 18, 1952, but these were rejected by Ralph in a letter dated December 30, 1952.

A separate arrangement was entered into by Ralph with plaintiff, which was confirmed by an instrument dated January 12, 1953. By it Ralph was to receive commissions from plaintiff for services to be rendered in procuring contracts for well drilling and equipment sales. The final paragraph of the accompanying letter from Zucker to Ralph reads:

> "I am sorry you did not go along with my thought on the Stockberger [sic] property. I thought my proposals a fair one, in which the risk was on our group and you bore none. I hope you made an acceptable deal and will profit from the operation and that your affairs will prosper in Lakeview."

January 26, 1953, a contract for the drilling of a well was entered into by Lyell Stark as "owner", and plaintiff as "driller" for the drilling of a well at a price of $6.00 per foot. Charles Stone and Tom Farrell signed the contract on behalf of plaintiff. The property of which Lyell was "owner" and upon which the well was to be drilled was not mentioned in the contract, but plaintiff's crew had set up its drilling rig on the Stockburger property the previous day and actual drilling got under way on the 26th of January. The location of the well had been chosen one or two days earlier by Stockburger in the presence of Lyell and the drilling crew. Stone, the man in charge of the drilling crew, testified that Lyell, Ralph and Stockburger were often

present during the course of the drilling and that he, Stone, took orders from Ralph and Lyell.

Ralph replied to Zucker's January 12th letters by letter of February 25, 1953, on Lakeview Drilling Company stationery. A portion of that letter reads as follows:

"As you perhaps know, The Stockberger [sic] Well is showing up good and there is no doubt as to the waters being plentiful enough to protect values and from gas and oil showings we have high hopes that other proofs of an oil field can be established, incedentally [sic] Harry, while I refused your proposition on the Stockberger [sic] deal, I didn't close any doors or burn any bridges, I want you to know that I appreciate your association and am very concious [sic] of the value of your friendship and fellowship."

Drilling of the well was halted on February 28, 1953, at a depth of 1728 feet upon orders from Zucker in New York. Stone reported this to Ralph and was told to proceed and bring the well in and that he would be paid off. The well was completed on March 1, 1953.

Zucker testified that payments toward the price of the well were received by plaintiff from Lyell on February 26, 1953, in the amount of $1,000 and from Ralph on March 2, 1953, in the amount of $1,500.

On or about the 23rd or 24th of March Zucker was again in Lakeview and met with Ralph at plaintiff's local office there. They discussed the completion of payments for the well. Ralph stated that he did not have the cash then but that Lyell had it, and Lyell was out of town. Ralph assured Zucker that arrangements would be made as soon as possible to reach Lyell which would be the next day, or soon thereafter. On the next day, however, Ralph indicated to Zucker that the price should be lowered and, when Zucker refused

to consider any reduction, Ralph left. Several days later Zucker went to Stockburger and explained that the well had not been fully paid for. Stockburger denied any liability with respect to the well.

March 28, 1953, plaintiff, through Stone, signed and filed a notice of lien on the Stockburger property, claiming the contract price of $6.00 per foot for 1728 feet, or $10,368; reduced by the $2,500 already received, or a total of $7,868. Plaintiff's attorney sent notice of intention to commence suit to foreclose the lien to Lyell, Ralph and Stockburger on September 4, 1953, and the complaint was filed September 21, 1953.

■ Plaintiff's first assigment of error is directed to the finding of the court that Lyell, Ralph and Stockburger were not engaged in a joint adventure with respect to the drilling of the well. We quote from *Drake Lumber Co. v. Paget Mortgage Co.*, 203 Or 66, 274 P2d 804:

> "* * * joint control and proprietorship as well as an agreement to share the profits, are generally essential to a joint adventure."

See, to like effect, *Portland Trust & Savings Bank v. Lincoln Realty Co.*, 180 Or 96, 170 P2d 568.

None of these elements were present in the relationship which existed between Stockburger and the Starks. The only agreement in which Stockburger was involved was the option contract with Ralph. Their relationship was thus one of potential vendor and vendee, and not of partnership. It is true that both stood to gain if a producing well was brought in, but that does not mean that they agreed to share "profits." Indeed, vendor and vendee in most land transactions seek to improve their positions by means of the conveyance, but this does not constitute them partners or joint adventurers.

Neither do Stockburger's actions at the well site lead to the conclusion that he was "in control" of the operation. He did select the site, but that was strictly according to the terms of the option contract. He also was present often during the drilling and spoke with the men on the job, but he never gave any orders to the driller, who testified that he looked to the Starks for any instructions that he might need.

■ One against whom a lien is sought to be foreclosed must have an interest in the premises. We have shown that Ralph had no such interest on a joint adventure theory. Neither did he have one as the holder of an option. *Strong v. Moore,* 105 Or 12, 207 P 179; *Herndon v. Armstrong,* 148 Or 602, 36 P2d 184, 38 P2d 44. His presence on the land was as a licensee. *Kingsley v. Kressly,* 60 Or 167, 111 P 385, 118 P 678. He certainly had no interest in the premises after February 23, 1953, when the option expired, unexercised.

■ It follows, then, that plaintiff's right to a lien must stand or fall with respect to his rights as against Stockburger. Plaintiff claims that its lien is not for labor and materials, but is for the contract price of $6.00 per foot, and that it is a contractor and not a materialman or laborer. In the view we have taken of the case, this cannot be so as regards plaintiff's rights against Stockburger. Plaintiff is not a contractor as to Stockburger as that term has been defined by this court.

"An original contractor within the meaning of the mechanic's lien law is one who furnishes labor or material and labor on a contract direct with the owner."

*Drake Lumber Co. v. Lindquist,* 179 Or 402, 170 P2d 712; also, to like effect, *Barr v. Lynch,* 163 Or 607, 97 P2d 185; *Anderson v. Chambliss,* 199 Or 400, 262 P2d 298.

Nor is the contract price material since the fact that Stockburger was not a party to the drilling contract relieves him from liability under its terms. Any liability to which Stockburger may be subject must be measured by the reasonable value of the labor and materials supplied. *Christman v. Salway,* 103 Or 666, 205 P 541. Plaintiff has not attempted to prove the reasonable value of the labor and materials supplied. However, for the sake of progress, we shall assume that its claim for the amount remaining on the contract price is equivalent to the reasonable value of the labor and materials supplied.

■ The court below held that plaintiff, nevertheless, could not claim a lien because it had failed to give notice to Stockburger within seven days from the first delivery of materials pursuant to ORS 87.020(1). That finding is attacked by the second assignment of error; although it should be noted that plaintiff's reply brief concedes that if the lien is considered to be one for materials or labor, the notice called for by ORS 87.020(1) would have to have been given. (87.020 restricts the requirement of the seven-day notice to claimants "furnishing any material or supplies"). *Barr v. Lynch,* supra, is a holding that where the lien claimant did not contract directly with the owner or the owner's common-law agent, the seven-day notice was necessary to subject the owner's interest to a lien for materials furnished. *Schram v. Manary,* 123 Or 354, 260 P 214, 262 P 263; *Nicolai-Neppach Co. v. Moore,* 120 Or 163, 251 P 268. In the present case, the materials furnished consisted of well casing.

■ Plaintiff's lien for those materials thus fails, and there having been no segregation in the lien notice of charges for labor and materials, the whole lien claim must fail under a familiar rule. *Johnson v. Alm,* 121

Or 285, 254 P 803; *Barber v. Henry,* 197 Or 172, 252 P2d 802; *Anderson v. Chambliss,* supra.

■ Plaintiff attempts to avoid the necessity of satisfying the notice provisions of ORS 87.020(1) by claiming that such notice is not necessary if the owner has actual notice of the delivery of the materials. No such exception is found in the statute. The dissenting opinion in *Edmiston v. Kiersted,* 140 Or 299, 12 P2d 299, upon which the plaintiff relies, indicated the feeling of the author of that opinion that actual knowledge should excuse failure to give the statutory notice. That view has not found acceptance, and its proponent has felt a duty to abandon it. The majority opinion in the Edmiston case quoted with approval from 40 CJ, Mechanics' Liens, 164, to this effect:

> "Mere knowledge of the owner that a certain person is doing work or furnishing materials does not take the place of statutory notice."

See, also, *Lorenz v. Pilsener Brewing Co. of Oregon,* 159 Or 552, 81 P2d 104. Plaintiff also attempts to sustain his position by citing the earlier case of *Randolph v. Christensen,* 124 Or 661, 265 P 797, particularly the sentence which reads:

> "Stevens was aware of the fact that improvements and repairs were being made upon the premises; he was present almost from the beginning of the work, was informed fully as to the contemplated improvements, and neither remonstrated nor posted notices of non-liability * * *; hence, his interest was subjected to the plaintiff's lien."

Stevens, however, was not a party to the appeal. His interest in the litigation was negligible. Although he had been the original vendor of the property on an installment basis, he had been fully paid, with the exception of $100. The statement, therefore, was dictum.

■ By his ninth assignment of error, plaintiff claims that the court erred in transferring the cause to the law side of the court before defendants had rested. *Newman v. Stover,* 187 Or 641, 213 P2d 137. That was a will contest and when the suit was dismissed plaintiff had no further opportunity for relief. Here, however, upon the court's finding that plaintiff had no right to equitable relief, it transferred the cause to the law side of the court, and plaintiff had the opportunity to proceed there, which he refused. The court did not err in granting the motion to transfer.

In any event, plaintiff has obtained the review sought. The concluding paragraph of its brief reads:

"In view of the state of the record in this case, and the law of the State of Oregon as unequivocally expressed in Newman v. Stover, supra, this court should now decide this case without sending it back to the lower court for the taking of additional testimony."

The holding that plaintiff was not entitled to a lien against any of the defendants makes consideration of the remaining assignments of error unnecessary.

The judgment is affirmed.