Argued and submitted September 14, 2004, reversed and remanded for recalculation of award of prejudgment interest as of September 10, 2001; otherwise affirmed December 7, 2005

In the Matter of
the Consolidated Hyundai Plant Litigation.

L. H. MORRIS ELECTRIC, INC.,
*Plaintiff,*

*v.*

HYUNDAI SEMICONDUCTOR AMERICA, INC.,
a California Corporation;
Hyundai Electronics America, Inc.,
a California Corporation;
Hyundai America, Inc.,
a California corporation;
The Chase Manhattan Bank USA, N.A.,
a national banking institution;
Marshall Contractors, Inc., aka ADP Marshall, Inc.;
ADP Marshall, Inc.,
an Arizona corporation, fka Marshall Contractors, Inc.;
M+W/Marshall Joint Venture, a joint venture,
aka Meissner+Wurst/Marshall Joint Venture;
Meissner+Wurst U.S. Operations, Inc.,
a Delaware corporation,
fka Meissner & Wurst GmbH & Co. - U.S. Operations, Inc.,
or Meissner+Wurst GmbH - U.S. Operations, Inc.,
and City of Eugene,
an Oregon municipal corporation,
*Respondents,*

*and*

SCOTT CO.,
a California corporation,
aka Scott Company of California,
Scott Co. of California, and Scott Company,
*Appellant.*

16-98-05206; A119475

125 P3d 87

*See also* 187 Or App 32, 66 P3d 509.

Jeffrey M. Batchelor argued the cause for appellant. With him on the briefs were Markowitz, Herbold, Glade & Mehlhaf, P.C., and Kevin P. Donnelly and Dann & Meacham.

Arnold L. Gray argued the cause for respondents Hyundai Semiconductor America, Inc., Hyundai Electronics America, Inc. Hyundai America, Inc., The Chase Manhattan Bank USA, N.A., Marshall Contractors, Inc., ADP Marshall, Inc., M+W/Marshall Joint Venture, and Meissner+Wurst U.S. Operations, Inc. With him on the brief were Robert Coleman and Stewart Sokol & Gray, LLC, and Jeffrey K. Hanson and Yazbeck, Cloran & Hanson, LLC.

Jeffery J. Matthews waived appearance for respondent City of Eugene.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

WOLLHEIM, J.

**WOLLHEIM, J.**

In this construction dispute, defendant Scott Company of California appeals a judgment that, among other things, dismissed its construction lien against Hyundai Semiconductor America, Inc., awarded attorney fees, costs, and disbursements to the project's construction manager, and confirmed an arbitration award. Scott's appeal raises three issues: (1) Did the trial court err in dismissing Scott's lien claim against Hyundai in light of the arbitration award? (2) Did the trial court err in granting attorney fees in the lien proceeding not to the owner, but to the general contractor, M+W/Marshall? (3) Did the trial court err in the amount of prejudgment interest it awarded? As explained below, we conclude that the trial court correctly disposed of the lien claim and granted attorney fees, but erred in its calculation of prejudgment interest. Therefore, we reverse and remand for recalculation of prejudgment interest.

This appeal is one small piece of the complex litigation—the "Consolidated Hyundai Plant Litigation"—spawned by disputes that arose from the construction of a more than $1 billion microchip fabrication facility known as the Hyundai E-4 Fab Facility in Eugene, Oregon. Only some of the multitude of players involved in the consolidated litigation are involved in this particular dispute. Hyundai Semiconductor America, Inc., owned the real property on which the improvement took place. M+W/Marshall was Hyundai's "construction agent" and the construction manager for the construction of the facility.[1] M+W/Marshall entered into a subcontract with Scott Company of California under which Scott was to furnish and install certain mechanical systems (*i.e.*, "HVAC, piping and process piping fabrication and installation") at the facility.

In July 1996, Scott began furnishing the labor and materials called for in its contract with M+W/Marshall. In the spring of 1998, Scott filed a construction lien for about $13.5 million against the Hyundai property. Disputes eventually arose, and in the consolidated litigation that followed

---

[1] ORS 87.005(3) provides, " 'Construction agent' includes a contractor, architect, builder or other person having charge of construction or preparation."

completion of the facility, the various parties sought recovery from one another. Among other claims and cross-claims made by the parties, Scott filed three cross-claims against M+W/Marshall and Hyundai. In its first cross-claim, Scott alleged that M+W/Marshall had breached its contract with Scott. Scott claimed that it had agreed to perform its duties under the subcontract for $29,379,870; that M+W/Marshall had breached the contract; and that, as a result of the breach, Scott had suffered $13,393,549 in damages. In its second cross-claim, Scott asserted an alternative *quantum meruit* claim against—among others—M+W/Marshall (but not against Hyundai); it claimed damages in the same amount as it claimed under the contract. Finally, Scott asserted a lien foreclosure claim against Hyundai, its lender, and "any and all other named parties claiming any right, interest, title or lien in the Improvement or Property."[2] It alleged that it had filed the lien noted above in the amount of $13,536,548.51. It also asserted in its cross-claim that, "[a]fter the claim of lien was filed, Scott's damage summary was revised by its consultant to the amount of $13,393,548.99"—the same amount as the damages Scott claimed in its contract and *quantum meruit* claims against M+W/Marshall.

In May 1999, after Scott had filed its cross-claims, M+W/Marshall filed a demand to arbitrate Scott's contract and *quantum meruit* claims. Ultimately, the parties stipulated to the arbitration of all "contract and common law claims" that arose out of the construction of the fabrication facility. The remainder of this litigation—really just the lien claim—was stayed and the contract and *quantum meruit* claims were arbitrated. In February 2001, before the three-arbitrator panel had rendered its award, M+W/Marshall served Scott with a $6,350,000 offer of judgment. In that offer, which was made pursuant to ORCP 54 E, M+W/Marshall offered to "allow judgment to be taken against it by" Scott, "resolving all claims asserted by Scott" against—among others—Hyundai and M+W/Marshall.[3] Scott rejected the offer.

---

[2] At that time, M+W/Marshall was foreclosing its own construction lien.

[3] By this time, M+W/Marshall had settled its disputes with Hyundai and it had assumed Hyundai's defense.

In October 2001, after six weeks of hearings, the arbitration panel rendered its award. The net total award in favor of Scott, after deducting the backcharges determined in M+W/Marshall's favor, was $3,058,571.26. With the arbitration award in hand, M+W/Marshall returned to court and moved—in a motion purporting to have been filed "pursuant to ORCP 21"—to dismiss Scott's remaining cross-claims against it and Hyundai. Specifically, M+W/Marshall sought to have the lien claim dismissed. That motion was based on arguments that the arbitration award had preclusive effect on the lien claim and that the lien claim was grossly overstated. M+W/Marshall also moved—again, "pursuant to ORCP 21"—for an order granting it attorney fees. In support of its motions to dismiss the lien claim and for attorney fees, M+W/Marshall submitted the arbitration award, affidavits, and exhibits to the affidavits. Finally, M+W/Marshall moved for an order confirming the arbitration award. Scott did not object to having the arbitration award confirmed.

After extensive briefing and a hearing, the trial court entered an order that (1) granted M+W/Marshall's motion for attorney fees, remanding the matter to the chair of the arbitration panel to determine the amount of those fees; (2) dismissed Scott's remaining claims, specifically the lien claim; and (3) confirmed the arbitration award. After the amount of attorney fees was determined, the trial court entered a judgment awarding M+W/Marshall $1,138,000 in costs, disbursements, and attorney fees. The judgment also provided that Scott's lien against the Hyundai property was "released, dismissed, vacated and removed as encumbrances against the Property." It is from that judgment that Scott appeals.

On appeal, Scott makes three assignments of error. First, Scott asserts, the trial court erred in dismissing its lien claim. Second, Scott claims, the trial court erred in awarding M+W/Marshall attorney fees. Finally, Scott argues, the trial court "erred in denying Scott prejudgment interest from September 10, 2001 until entry of judgment." We address each assignment of error in turn.

## I. DISPOSITION OF THE LIEN CLAIM

In its first assignment of error, Scott claims that the trial court erred in dismissing its lien claim against Hyundai. In the trial court, as noted, M+W/Marshall proffered two theories under which it was entitled to have the lien claim dismissed. M+W/Marshall first asserted that the lien claim was precluded because "[a]ll of Scott Co.'s claims set forth in its Amended Cross-Claims against the moving parties have been fully adjudicated in an arbitration hearing on the merits." Second, M+W/Marshall asserted, "Scott Co.'s lien in the amount of $13,536,548.51 was overstated because of Scott Co.'s gross and palpable negligence which is sufficient to raise a presumption of fraud and because the lien does not contain a 'true statement of demand, after deducting all just credits and offsets' as required by ORS 87.035(3)." M+W/Marshall claimed that, "despite its knowledge that its lien amount was excessive and included non-lienable items such as alleged delay damages, Scott Co. made no efforts to amend or partially release its lien. Therefore, Scott Co.'s lien is invalid, and its lien foreclosure claim should be dismissed."

Following a hearing, the trial court made the following findings of fact and conclusions of law:

"9. Oregon case law interpreting ORS Chapter 87 provides that a lien may be invalidated if the lien is substantially overstated. *See*, A-C Construction, Inc. v. Bakke Corporation, 153 Or. App. 41, 47, 956 P.2d 219 (1998) and Brown v. Farrell, 258 Or. 348, 354, 483 P.2d 453 (1971).

"10. Scott Company's lien was recorded against Hyundai's Property and Project in 1998, in the principal amount of $13,536,548. The components of Scott's lien claim were identical to the components of its breach of contract and *quantum meruit* claims. After arbitrating its claims, Scott Company was only awarded the principal sum of $2,450,733, resulting in its lien being overstated by the sum of $11,085,815. This amount of Scott Company's overstatement was more than four and one-half times the amount it recovered."

(Record citations omitted; underscoring in original.)

On appeal, Scott offers three alternative bases for reversing the trial court's dismissal of its lien claim. Scott asserts first that the trial court should have denied M+W/Marshall's motion to dismiss because it was based on matters outside the pleadings. Second, Scott argues that, even if the trial court properly treated the motion as a motion for summary judgment (thereby allowing consideration of facts outside the pleadings), the arbitration award had no preclusive effect. Finally, Scott claims that the arbitration did not establish that its lien claim was overstated.

We begin with Scott's argument that the trial court erred in considering matters outside the pleadings in ruling on M+W/Marshall's motion to dismiss. As noted, M+W/Marshall's motion included the notation that it was seeking relief pursuant to ORCP 21. Although the motion did not specify under which section of ORCP 21 it was made, we agree with Scott that, if the motion really was an ORCP 21 motion, it was made under ORCP 21 B. That rule provides that, "[a]fter the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." Scott argues that "[t]hese were not summary judgment motions. They were Rule 21 motions that should have been denied because they were based on matters outside the pleadings."

M+W/Marshall responds that Scott failed to preserve its claim of error for appeal. According to M+W/Marshall, Scott never objected to the court's consideration of materials outside the pleadings. M+W/Marshall also asserts that Scott invited any error in the court's treatment of its motions by including such materials in its submissions in response to the motion. Finally, M+W/Marshall urges that the motions were the functional equivalent of summary judgment motions, despite their labels.

The first problem with Scott's argument, as M+W/Marshall points out, is that it never objected to the trial court's consideration of affidavits and exhibits filed in support of M+W/Marshall's motion. That is, throughout the briefing, at the hearing on the motions to dismiss and for attorney fees, and even in response to the trial court's order resolving the motions, Scott never suggested that the trial

court should have limited its consideration only to the pleadings. Moreover, Scott attached affidavits of its own to its response to M+W/Marshall's motion to dismiss. Finally, the trial court relied on the evidence provided by the parties in ruling on the motion. In short, in the trial court, both parties treated M+W/Marshall's motion as one for summary judgment, despite its label. We need not decide whether the most accurate description of what occurred in the trial court was a failure to preserve a claim of error, invited error, or mutual treatment of the motions as summary judgment motions. Whatever the proper label, the trial court did not err in treating M+W/Marshall's motions as summary judgment motions.

We faced a similar situation in *Kelly v. Olinger Travel Homes, Inc.*, 200 Or App 635, 117 P3d 282 (2005). In that case, the parties abated the action while the claims against one of the defendants were arbitrated. As in this case, after the arbitration was final, the parties returned to court and one defendant moved for partial judgment on the pleadings, attaching a copy of the arbitration award. The trial court granted the motion for partial judgment on the pleadings. *Id.* at 639-40.

On appeal, the plaintiff assigned error to the grant of partial judgment on the pleadings. In addressing the plaintiff's arguments, we explained,

"We note that, although the motion was styled as an ORCP 21 B motion, neither the parties nor the trial court have treated it as such. An ORCP 21 B motion for judgment on the pleadings is appropriate only when, on the face of the pleadings, the plaintiff has no valid claim. *Curtis v. MRI Imaging Services II*, 327 Or 9, 11, 16, 956 P2d 960 (1998). 'If it is necessary for the court to refer to evidence outside the pleadings to decide the motion, the court cannot decide the matter "on the pleadings," and the motion must be denied.' *Thompson v. Telephone & Data Systems, Inc.*, 130 Or App 302, 309, 881 P2d 819, *adh'd to as modified on recons*, 132 Or App 103, 888 P2d 16 (1994).

"Here, the parties and the trial court have assumed that defendant's motion could be resolved with reference to the arbitration award. However, that assumption is mistaken because the arbitration award constituted evidence outside the pleadings. *See* ORCP 13 A (defining 'pleading'). When a

motion has been styled as a motion for judgment on the pleadings but the parties have introduced evidence outside the pleadings and the trial court has relied on that evidence in ruling on the motion, we have treated the motion as one for summary judgment or directed verdict. *Jones v. Emerald Pacific Homes, Inc.*, 188 Or App 471, 480, 71 P3d 574, *rev den*, 336 Or 125 (2003). We do so here.

"We conclude that the parties essentially treated the motion as one for summary judgment. In reviewing a grant of summary judgment, we view the record in the light most favorable to the nonmoving parties, in this case plaintiffs, to determine whether a genuine issue of material fact exists and, if not, whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997)."

*Kelly*, 200 Or App at 641.

As in *Kelly*, the parties here—with no objection—submitted evidence in support of their positions regarding dismissal of the lien claim. Although M+W/Marshall referred to ORCP 21 in its motion, the Supreme Court "has held that a motion is controlled by its substance, not its caption." *Welker v. TSPC*, 332 Or 306, 312, 27 P3d 1038 (2001). The trial court considered the arguments and evidence submitted in determining whether to grant M+W/Marshall's motion to dismiss. Thus, the motion was, in effect, a motion for summary judgment, and we treat it as such on appeal. It follows that "we view the record in the light most favorable to the nonmoving parties, in this case plaintiffs, to determine whether a genuine issue of material fact exists and, if not, whether the moving party is entitled to judgment as a matter of law." *Kelly*, 200 Or App at 641. We turn to the question whether the court erred in granting summary judgment in M+W/Marshall's favor on Scott's lien claim.

Scott challenges the trial court's disposition of its lien claim on a number of grounds. As noted, one of the bases for M+W/Marshall's motion to dismiss was that the lien claim was barred by issue preclusion. Under ORS 87.010(1), a subcontractor such as Scott has a lien on property it improves for the "reasonable value of labor and material supplied." *A-C Construction, Inc. v. Bakke Corp.*, 153 Or App 41, 50, 956 P2d 219, *rev den*, 327 Or 553 (1998). Scott argues on appeal that

the arbitration award did not have preclusive effect on its lien claim:

> "[W]e cannot say, on this record, that the reasonable value of Scott's lien claim against Hyundai, with which Scott had no contract, was presented to the * * * arbitrators, who were engaged to decide a contract-bound *quantum meruit* claim. The point here is that the arbitration award does not disclose with the requisite certainty *how* the arbitrators addressed Scott's *quantum meruit* claim against M+W/M[arshall], or whether they addressed it at all."

(Emphasis in original.) That is, Scott asserts, the arbitrators did not determine the reasonable value of the labor and material it furnished Hyundai. A necessary corollary of Scott's position that it should be able to pursue its lien claim against Hyundai is that it potentially may recover more under that claim than it recovered in arbitration of its contract and *quantum meruit* claims against M+W/Marshall.

For its part, M+W/Marshall presents two alternative arguments in support of what we have determined was a grant of summary judgment in its favor on Scott's lien claim. M+W/Marshall asserts—and we agree—that, if either of its arguments is correct, we must affirm the judgment disposing of the lien claim. First, M+W/Marshall argues, the value of the lien claim was decided in the arbitration proceeding:

> "[T]he ceiling on Scott's construction lien entitlement can be no higher than its subcontract + *quantum meruit* entitlement, and *quantum meruit* is *always* limited to the extent there is a valid subcontract covering that work. Because * * * Scott's subcontract price + *quantum meruit* recovery as decided in arbitration is equal to or greater than Scott's lien entitlement, Scott must lose on the main issue of this appeal—issue preclusion. These measures of damages are identical (*i.e.*, common law contract + *quantum meruit* = 'reasonable value' under the lien laws)."

(Emphasis in original.) Relying in part on ORS 87.070, M+W/Marshall asserts that there is no more for Scott to recover under its lien claim.[4] That is, M+W/Marshall asserts—as we

---

[4] ORS 87.070, which is discussed in more detail in the text below, provides:

"Any contractor may recover, upon a lien perfected by the contractor, only the amount due to the contractor according to the terms of the contract, after deducting all claims of other parties for work done and materials furnished for

understand it—that (1) ORS 87.070 limits the amount that can be recovered under a lien claim to the contract price, plus any damages for *quantum meruit*, and (2) because the arbitrators' award comprised those two elements, it is preclusive as to the lien claim.

M+W/Marshall's second argument is that the trial court correctly dismissed the lien claim on the ground that the lien was grossly overstated. According to M+W/Marshall,

> "[t]here can be no dispute that the arbitrators concluded that the value of both Scott's contract claim and *quantum meruit* claim (exclusive of interest) was $2,450,733.41. Because Scott's contract claim and *quantum meruit* claim together comprise the total amount Scott could claim for its lien as a matter of law, there can be no dispute that the actual value of Scott's lien was $2,450,733.41. But Scott's lien claimed $13,536,548.51. Thus, Scott's lien was overstated by $11,085,815.10."

(Record citations omitted.)

For the reasons explained below, we agree that Scott is entitled to recover no more on its lien claim than it already recovered in arbitration. It follows that the trial court correctly granted summary judgment in M+W/Marshall's favor on Scott's lien claim.[5] In analyzing the issue preclusion issue, we must begin by addressing two preliminary questions. The

which a lien is perfected under ORS 87.035. Where a claim of lien is filed pursuant to ORS 87.035 for work done or material or equipment furnished to any contractor, the contractor shall defend any action brought thereupon at the expense of the contractor, and during the pendency of such action the owner may withhold from the contractor the amount of money for which such claim of lien is filed. In case of judgment against the owner or the property of the owner upon the lien, the owner may deduct from any amount due or to become due by the owner to the contractor the amount of such judgment and costs; and if the amount of the judgment and costs exceeds the amount due by the owner to the contractor, or if the owner has settled with the contractors in full, the owner may recover back from the contractor any amount so paid in excess of the contract price, and for which the contractor was originally the party liable."

[5] Because we resolve this assignment of error on the ground that ORS 87.070 precludes the lien claim, we do not address—and express no opinion on—whether the lien claim was overstated. To the extent that the trial court's decision was based on the lien overstatement ground, and to the extent that M+W/Marshall's alternative argument presents an entirely legal issue, we may affirm on the latter ground. *See generally Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining the "right for the wrong reason" rationale for affirmance).

first question is, what did the arbitration necessarily decide? The second question we must resolve is whether ORS 87.070 imposes a cap on the damages that a subcontractor can obtain in a lien foreclosure against an owner.

Exactly what did the arbitration resolve? As noted, Scott and M+W/Marshall agreed to arbitrate "all contract and common law claims between the parties which arose out of the construction of the Hyundai plant." And the arbitration award—to which Scott did not object—stated, "This award is in full settlement of all claims and counterclaims submitted to this arbitration." It follows—and Scott does not dispute— that the arbitration award determined, at the least, the value of the sum of Scott's *quantum meruit* claims and its claims under its contract with M+W/Marshall.

But the parties disagree about whether the award can be parsed even further. Scott argues that we cannot tell how the arbitrators apportioned the damages they ultimately awarded between the contract and *quantum meruit* claims. M+W/Marshall asserts that, by examining the arbitration award and the course of the arbitration, it can be determined that the arbitrators found the *quantum meruit* claim to be worthless.

■ On this point, we agree with Scott. When *quantum meruit* and contract claims are pleaded in the alternative, the *quantum meruit* claim becomes relevant only if the contract does not address the services for which recovery in *quantum meruit* is sought. *See Kashmir v. Patterson*, 43 Or App 45, 47- 48, 602 P2d 294 (1979), *aff'd*, 289 Or 589, 616 P2d 468 (1980) ("*Quantum meruit* is a form of restitution where the plaintiff has performed services for defendant and seeks to recover their fair value. The law, in appropriate situations, will imply a quasi-contract. It is not consensual. It is not a contract. It is a remedial device which the law affords to accomplish justice and prevent unjust enrichment.").

Here, the arbitrators may have concluded that all the damages Scott sought were covered by the contract. If so, they would not have reached the *quantum meruit* claim. Or, the award could reflect a conclusion that the damages Scott requested were not covered by the contract between it and M+W/Marshall; in that case, the entire award would be in

*quantum meruit.* Or, the arbitrators might have reached the amount of the award through some combination of contract and *quantum meruit* damages. In short, all we can say for sure—as we said above—is that the arbitration award reflects the sum of any contract damages and any *quantum meruit* damages.

But that conclusion does not necessarily defeat M+W/Marshall's argument. M+W/Marshall argues that, even if it cannot be determined how the arbitration award should be allocated between contract and *quantum meruit* damages, the total award should be given preclusive effect. And, M+W/Marshall asserts, under ORS 87.070, that total amount is all that is necessary to determine the value of the lien claim, supporting the trial court's dismissal.

Before addressing the role of ORS 87.070 in the analysis, we take a detour to consider whether the arbitration award is entitled to preclusive effect. That detour is not extensive. We agree with M+W/Marshall that, for purposes of the lien foreclosure, the arbitration award is preclusive. Issue preclusion is appropriate where, among other requirements, the issue was "actually litigated and was essential to a final decision on the merits" in the prior proceeding. *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993).[6] In *Westwood Construction Co. v. Hallmark Inns*, 182 Or App 624, 627, 50 P3d 238, *rev den*, 335 Or 42 (2002), we addressed "whether, in a construction lien foreclosure action, preclusive effect should be given to common issues decided in arbitration pursuant to the parties' construction contract[.]" Noting that, "when an issue common to separate claims has been determined in a *prior separate* action, general principles of issue preclusion may apply," *id.* at 632 (emphasis in original), we concluded that issues necessarily decided in the arbitration—the date of substantial completion in that case—

---

[6] "The other criteria for issue preclusion are that: the issue in the two proceedings is identical; the party sought to be precluded has had a full and fair opportunity to be heard on that issue; the party sought to be precluded was a party or was in privity with a party in the prior proceeding; and the prior proceeding was the type of proceeding to which this court will give preclusive effect."

*Westwood Construction Co. v. Hallmark Inns*, 182 Or App 624, 637 n 10, 50 P3d 238, *rev den*, 335 Or 42 (2002) (citing *Nelson*, 318 Or at 104). Scott does not dispute that those other elements are satisfied here.

were entitled to preclusive effect in the lien foreclosure. The analysis and holding in *Westwood Construction Co.* apply equally here: For purposes of the lien foreclosure, the amount of Scott's contract and *quantum meruit* damages are equal to the arbitration award.

The final step in the issue preclusion analysis is to determine whether the amount of the arbitration award is, as a matter of law, equal to or greater than the value of the lien. We conclude that it is. ORS 87.070, quoted in full above, 203 Or App at 64-65 n 4, provides, in part, "Any contractor may recover, upon a lien perfected by the contractor, only the amount due to the contractor according to the terms of the contract, after deducting all claims of other parties for work done and materials furnished for which a lien is perfected under ORS 87.035." We agree with M+W/Marshall that ORS 87.070 caps the amount that a subcontractor may recover on its lien to the amount due under its subcontract.[7]

■ The first question is whether—in light of its reference to "any contractor"—ORS 87.070 applies to Scott, a subcontractor. In *Jersey & Son v. Bailey Const. Co.*, 262 Or 491, 495 n 2, 499 P2d 817 (1972), the Supreme Court recognized that there "may be some question whether ORS 87.070 was intended to apply to a subcontractor," but it did not address or resolve that question. Applying the template set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993), we first examine the text of the statute, in context. In that analysis, "words of common usage typically should be given their plain, natural, and ordinary meaning." *Id.* at 611. In common parlance, a contractor is "one who contracts on predetermined terms to provide labor and materials and to be responsible for the performance of a construction job in accordance with established specifications or plans." *Webster's Third New Int'l Dictionary* 495 (unabridged ed 2002); *see also Black's Law Dictionary* 350 (8th ed 2004) (defining a contractor as "one who contracts to do work

---

[7] The discussion that follows assumes that the arbitration award reflects contract damages only. If part of the arbitration award were attributable to *quantum meruit* damages, the value of Scott's lien claim would be even less than the amount of the arbitration award.

or provide supplies for another"). Nothing about those definitions suggests that the legislature intended to exclude subcontractors from the reach of the statute.

Moreover, the legislature used the phrase, "*any* contractor." That choice merely emphasizes the broad class to whom the legislature intended the provision to apply. *See Crocker and Crocker*, 332 Or 42, 51, 22 P3d 759 (2001) ("The word 'any' ordinarily would have a very broad sweep * * *."). In addition, in order to limit the reach of the statute, we would have to insert a word—such as "general" or "prime" before the word "contractor." That, we cannot do. ORS 174.040. In short, the text of ORS 87.070 itself suggests that the legislature's reference to "contractor" is intended to include contractors at all levels of a construction project.

Other considerations support that conclusion. Another rule of statutory construction provides that "use of a term in one section and not in another section of the same statute indicates a purposeful omission." *PGE*, 317 Or at 611. In ORS 87.005(7), the legislature defined "original contractor" as "a contractor who has a contractual relationship with the owner." In other words, for purposes of the Construction Lien Law, the "original contractor" is what is normally referred to as the "general contractor" in the construction trade. But the legislature did not use that term in ORS 87.070, despite its use in numerous provisions throughout the rest of the Construction Lien Law. *Cf. State v. Thomas*, 104 Or App 126, 129, 799 P2d 208 (1990) ("We presume that, in the Motor Vehicle Code, the legislature acted deliberately when it has qualified the term 'lane' in other instances. Because the legislature did not qualify 'lane' in ORS 811.400, it is apparent that the legislature intended ORS 811.400(1) to apply to all lanes of the highway, including those used for parking." (Footnote omitted.)). Moreover, the legislature added the definition of "original contractor" to ORS chapter 87 in 1975, *see* Or Laws 1975, ch 466, § 2, but did not amend ORS 87.070 to include that term. That decision presumably was a conscious choice. *See Emerald PUD v. PP&L*, 302 Or 256, 269, 729 P2d 552 (1986) (finding similar omission significant).

In addition, the legislature did use the unmodified word "contractor" elsewhere in the Construction Lien Law. The term is defined in ORS 87.005(4) to mean

"a person who contracts on predetermined terms to be responsible for the performance of *all or part of* a job of preparation or construction in accordance with established specifications or plans, retaining control of means, method and manner of accomplishing the desired result, and who provides: (a) Labor at the site; or (b) Materials, supplies and labor at the site."[8]

(Emphasis added.) That definition surely describes Scott. But, more to the point, the term is used in other places in the Construction Lien Law and it refers generally to any contractor. As M+W/Marshall explains, "[t]he Construction Lien law is replete with references to 'contractors,' and when [the legislature] intends a more narrow reach, it specifically uses the defined term 'original contractor.' " Indeed, the term "subcontractor" is defined in ORS 87.005(11) to mean "a *contractor* who has no direct contractual relationship with the owner." (Emphasis added.) For the purposes of the Construction Lien Law, a subcontractor is a type of contractor. Having examined the text and context of ORS 87.070, we conclude that the references to "contractor" in that provision include subcontractors such as Scott.

As explained above, ORS 87.070 limits the amount a subcontractor such as Scott may recover in its lien foreclosure to "the amount due to the contractor according to the terms of the contract." In this case, the arbitration award conclusively determined the sum of the amount M+W/Marshall owed under its contract, together with any *quantum meruit* recovery. Under ORS 87.070, Scott could recover

---

[8] ORS 87.005 states that the definitions set forth in that section apply to "ORS 87.001 to 87.060 and 87.075 to 87.093." ORS 87.070, the statute we consider here, is notably absent from that list. Scott asserts that we must give effect to the legislature's choice not to apply the ORS 87.005(4) definition to ORS 87.070. But the legislature nowhere indicated that the term should *not* be given its ordinary meaning in ORS 87.070. Moreover, in its brief, M+W/Marshall provides a persuasive explanation that the failure to include ORS 87.070 is merely a codification mistake. In any event, because we do not rely on the definition of "contractor" in ORS 87.005(4) for our analysis, we need not resolve whether the legislature intentionally omitted ORS 87.070 from the list of statutes to which the definitions in ORS 87.005 apply.

no more in its lien foreclosure against Hyundai. It follows that the trial court correctly dismissed Scott's lien claim.

■ That result makes practical sense. A construction lien is intended as a security device to help ensure that those who improve real property receive payment. *See, e.g., Drake Lumber Co. v. Lindquist*, 179 Or 402, 412, 170 P2d 712 (1946) ("The primary purpose of the mechanics' and materialmen's lien law * * * is to secure and protect laborers and materialmen for the labor performed and material furnished in the construction of buildings."). The legislature did not intend to give contractors a greater recovery under a lien than they could receive under their construction contract. ORS 87.070 evidences the legislature's intent to preclude—at least through the mechanism of a construction lien—recovery in an amount greater than the contract price.

Nonetheless, Scott argues that the value of a subcontractor's lien is determined by the value of labor and materials supplied and that the limit set out in ORS 87.070 does not apply to subcontractors. We have already rejected Scott's interpretation of ORS 87.070 as applying only to general contractors. We also reject Scott's claim that "cases have traditionally held that the value of a subcontractor's lien is determined by the reasonable value of the labor and materials and not by contract." *See, e.g., Lakeview Drilling Co. v. Stark et al.*, 210 Or 306, 310 P2d 627 (1957); *Christman v. Salway et al.*, 103 Or 666, 205 P 541 (1922); *A-C Construction, Inc.*, 153 Or App 41 (1998).

To be sure, in those cases the amount of the lien was determined by the value of the materials and labor furnished. But each is distinguishable from this case, and none involved interpretation of the limit imposed by ORS 87.070. *Christman*, for example, involved a subcontractor who had entered into a contract with the general contractor—a contract that did not identify which charges were attributable to labor and which were attributable to materials. 103 Or at 671-72. The question before the court was whether a subcontractor—who, by failing to provide a statutory notice, had lost his right to claim a lien on materials—was entitled to foreclose on a lien for his labor. It was in that context that the court reiterated the well-known rule that "the law fixes the

amount for which a lien may be had, as the reasonable value of the labor or materials, and not the price which the contractor agreed to pay therefor[.]" *Id.* at 676. The court's point in *Christman* was that the contract, because it was "entire," was not relevant to the issue of the value of the subcontractor's labor.

Nor was the issue presented in this case addressed in *Lakeview Drilling Co.* In that case, the lien claimant—a well-drilling company—had introduced evidence of its contract to drill, but no evidence of its labor and materials. 210 Or at 313. Although the court noted that the contract price was not material, it nonetheless assumed that the claimant's "claim for the amount remaining on the contract price is equivalent to the reasonable value of the labor and materials supplied." *Id.* at 314. Again, the court said nothing about the limitation imposed by ORS 87.070.

Finally, the subcontractor in *A-C Construction, Inc.,* was attempting to *increase* its recovery under its lien by reference to the subcontract. In that case, the court rejected that approach. 153 Or App at 50-51. ORS 87.070 comes into play as a limitation on recovery only when the amount sought under the "labor + materials" approach exceeds the contract price. Its effect is to hold any contractor to the bargain it made with either the owner or any "upstream" contractor. The cases cited by Scott do not suggest otherwise.

## II. THE AWARD OF ATTORNEY FEES

As noted, after the arbitration, M+W/Marshall sought attorney fees. It asserted that it was entitled to attorney fees "because Scott Co. grossly overstated the amount of its lien, rejected [M+W/Marshall's] Offer of Compromise[,] and acted in bad faith in pursuing a bogus claim." Following a hearing, the trial court granted M+W/Marshall's motion and, at its request, remanded the matter of the amount of attorney fees to the chair of the arbitration panel. Ultimately, however, the parties agreed that the attorney fees, costs, and disbursements that M+W/Marshall sought were reasonable in amount; they disagreed about whether M+W/Marshall was entitled to attorney fees at all.

In its findings of fact and conclusions of law, the trial court explained:

"The Court determined that M+W/M[arshall] has submitted an ORCP 54 E Offer in Compromise which Scott Company did not accept and failed to beat, when it was awarded only $3,058,571, including all pre-judgment interest. As a result, Scott Company was not the prevailing party and was not entitled to an award of any attorney's fees, costs or disbursements. The Court further determined that M+W/M[arshall], having prevailed in proving that Scott Company's claim of lien was invalid due to its substantial and gross overstatement, that M+W/M[arshall] was entitled to an award of its reasonable attorney's fees, costs and disbursements incurred in the Arbitration and litigation, pursuant to ORS 87.060(5)."

Ultimately, the court awarded over $1.1 million in attorney fees, costs, and disbursements.

On appeal, Scott argues that the trial court erred in awarding attorney fees to M+W/Marshall. The trial court awarded the fees pursuant to ORS 87.060(5), which provides, in part, "In a suit to enforce a lien perfected under ORS 87.035 the court shall allow a reasonable amount as attorney fees at trial and on appeal to the party who prevails on the issues of the validity and foreclosure of the lien." We review the trial court's decision to award attorney fees under ORS 87.060(5) for an error of law. *Gottenberg v. Westinghouse Electric Corp.*, 142 Or App 70, 73, 919 P2d 521 (1996).

■■ "As a general rule, a party has no right to recover attorney fees from an opponent unless a statute or contract confers that right." *Mitchell v. First Pacific Bank*, 130 Or App 65, 76, 880 P2d 490 (1994) (citing *Mattiza v. Foster*, 311 Or 1, 4, 803 P2d 723 (1990)). Scott argues that ORS 87.060(5) did not authorize an award of attorney fees for work performed in arbitration. Rather, citing *Harris v. Dyer*, 292 Or 233, 637 P2d 918 (1981), it asserts that "[f]ees incurred in arbitration are not recoverable under ORS 87.060(5) absent the parties' agreement to treat the arbitration as part of the statutory lien procedures." Here, Scott claims, because M+W/Marshall and Scott had no lien rights against one another, M+W/Marshall was not entitled to attorney fees. It points out that, as a subcontractor, it had no contract with Hyundai (the

owner) in which either party could have agreed to treat the arbitration as part of the lien foreclosure. Scott argues that, in any event, only the property owner and lien claimant potentially may receive attorney fees under the statute; M+W/Marshall was neither.[9]

M+W/Marshall frames the issue as follows: "[D]oes ORS 87.060(5) entitle any party other than the lien claimant and the owner to recover prevailing party attorney fees incurred in defending against a subcontractor's or supplier's lien?" M+W/Marshall suggests two reasons why it is entitled to attorney fees. First, it argues that, in *Bones Construction Co. v. En Stone I, Ltd.*, 89 Or App 530, 749 P2d 1217 (1988), this court decided that any party—not just a lien claimant or owner—may recover attorney fees under ORS 87.060(5). We reject that argument.[10] Second, M+W/Marshall argues, it is entitled to attorney fees as the prevailing owner, "because the evidence in the record demonstrates that M+W/M[arshall] had appeared on behalf of owner Hyundai and was defending Hyundai's interests in the lien foreclosure action." We begin with the Supreme Court's pronouncements in *Harris*.

*Harris* involved a contract dispute between a contractor and an owner. When the owner did not pay the contractor what the contractor believed he was due under the contract, the contractor filed a lien. The contract claim was arbitrated and the contractor won. He then sought to foreclose the lien in an amount greater than his arbitration recovery on the contract—an amount that included the attorney fees he incurred in the arbitration. The issue before the court was whether the contractor was "entitled to reasonable attorney fees incurred in arbitrating the amount of his claim." 292 Or at 235. The contractor relied on the predecessor to ORS 87.060(5) for his attorney fee claim.

---

[9] Scott does not challenge M+W/Marshall's designation as the prevailing party.

[10] Although the party claiming attorney fees in *Bones Construction Co.* was the holder of a trust deed and not the owner, nothing about the opinion suggests that any party challenged the award of attorney fees on the basis that it was not an owner. In any event, this court reversed the award of attorney fees on a different ground.

The court first concluded that the statute does not, by its terms, allow for recovery of attorney fees incurred in arbitration: "We doubt that when that section speaks of attorney fees to the 'prevailing party' * * * in a lien foreclosure proceeding, it means to include more than the statutory procedures themselves, or that it means to invite foreclosure suits as a step toward obtaining attorney fees for an arbitration under a contract that does not provide for such fees." *Id.* at 236-37.

The parties' contract, however, included a standard clause found in forms prepared by the American Institute of Architects:

> "The duties and obligations imposed by the Contract Documents and the rights and remedies available thereunder shall be in addition to and not a limitation of any duties, obligations, rights and remedies otherwise imposed or available by law."

Interpreting that language, the court "conclude[d] that the contract between the parties reserves to the prevailing party in a lien foreclosure suit the full 'reasonable' attorney fees available in such a suit under [the predecessor to ORS 87.060(5)], determined to include those fees 'reasonable' for the arbitration proceeding but not exceeding what would be 'reasonable' if all issues had been litigated in the foreclosure proceeding." *Id.* at 238-39.

"Thus," this court later explained, "the [*Harris*] court held that the *contract between the parties* preserved the parties' right in a lien foreclosure action to recoup reasonable fees for work done in arbitration as if all issues had been litigated in the foreclosure proceeding rather than in the arbitration." *Westwood Construction Co.*, 182 Or App at 640. (Emphasis in original.) Because the contract at issue in *Westwood Construction Co.* was identical to the contract provision in *Harris*, this court concluded that *Harris* was controlling. *See also ASB Construction v. Bateman*, 124 Or App 638, 642, 863 P2d 516 (1993) (identical contract provision; same result).

Here, the contract between M+W/Marshall and Scott contains the same wording as appeared in the contracts in *Harris*, *Westwood Construction Co.*, and *ASB Construction*. It follows that, if Hyundai—rather than M+W/Marshall—had been a party to the arbitration and the contract, it would have been entitled to attorney fees. The question framed by M+W/Marshall, then, is the proper one: Does it make a difference—in terms of applying the analysis in *Harris*—that the construction agent and party that had assumed the owner's defense is the one seeking attorney fees?

We agree with the trial court that it does not. Indeed, the plain language of the statute provides that attorney fees may be awarded to "the party" who prevails on the issues of the validity and foreclosure of the lien. It does not limit recovery to the lien claimant or owner. In this case, M+W/Marshall was pursuing its own lien claim against Hyundai when Scott filed its lien foreclosure claim, alleging that the claim was "against" Hyundai, its lender, and "any and all other named parties [which include M+W/Marshall] claiming any right, interest, title or lien in the Improvement or Property." M+W/Marshall was a party to the lien claim. Moreover, as noted above, M+W/Marshall had assumed Hyundai's defense; in essence—at least for purposes of the lien claim—M+W/Marshall was the owner. M+W/Marshall moved to dismiss the lien claim and sought attorney fees both for itself and on Hyundai's behalf. Its motion to dismiss Scott's lien claim included the assertion that "M+W/Marshall * * * as well as Hyundai * * * move this Court * * * for an Order Dismissing the Amended Cross-Claims of Scott Company of California * * *."

In short, we reject Scott's attempt to place a limit on the reach of ORS 87.060(5) where none exists. *See* ORS 174.010 (court is not to insert "what has been omitted" in construing statute). Because (1) M+W/Marshall was a party to the lien foreclosure claim, both in its own right and standing in the shoes of the owner, and (2) the contract between Scott and M+W/Marshall reserved the parties' rights to recoup attorney fees incurred in arbitration, the trial court correctly awarded M+W/Marshall attorney fees.

## III. PREJUDGMENT INTEREST

In its third assignment of error, Scott asserts that the trial court erred in determining the date from which prejudgment interest on its money judgment should run. We begin by recounting the dates on which the relevant procedural events occurred. The arbitrators issued their roughly $3 million award in favor of Scott on October 3, 2001. As part of the award, the arbitrators determined that Scott was entitled to prejudgment (technically, "pre-award") interest on the various components of its recovery through September 10, 2001. On December 18, 2001, the trial court granted M+W/Marshall's motion to confirm the arbitration award; it also dismissed Scott's lien claim and granted M+W/Marshall's motion for attorney fees. The court remanded the issue of the amount of attorney fees to the chair of the arbitration panel. In its "Amended Final Money Judgment," entered the following year, the trial court ordered that Scott was entitled to prejudgment interest of "[n]ine percent (9%) per annum, from 12/18/01, until judgment is entered." (Underscoring in original.)

Scott argues that the trial court should have ordered prejudgment interest to run from September 10, 2001—rather than from December 18—until judgment was entered; that is, Scott claims that it has been shorted about three months worth of prejudgment interest. M+W/Marshall responds that the amount of Scott's recovery could not be ascertained until December 18, because it was not until that date that the trial court issued an order dismissing Scott's lien claim and granting M+W/Marshall attorney fees. "Accordingly," M+W/Marshall explains, "the trial court did not err in refusing to award Scott prejudgment interest on the arbitration panel's award between September 10, 2001 and December 18, 2001, the date upon which Scott's net damages were ascertained." In any event, M+W/Marshall asserts, even if the trial court should have awarded those additional three months worth of prejudgment interest, the interest should have accrued only on Scott's net recovery, *viz.*, $1,920,571.26, and not on the arbitration award of over $3 million.

 ORS 82.010(1)(a), which provides that interest is payable on "[a]ll moneys" after they become due, "applies with full force to prejudgment interest[.]" *Wilson v. Smurfit Newspaper Corp.*, 197 Or App 648, 673, 107 P3d 61, *rev dismissed*, 339 Or 407 (2005). But there is, as we have explained, a limitation on that general rule:

> "Interpreting a predecessor statute to ORS 82.020(1)(a), the Supreme Court held that a party can receive prejudgment interest only when the ' "exact pecuniary amount was either ascertained, or ascertainable by simple computation, or by reference to generally recognized standards such as market price," and where "the time from which interest * * * must run * * * can be ascertained." ' *Public Market Co. v. Portland,* 171 Or 522, 625, 138 P2d 916 (1943) (quoting 1 Sedgwick on Damages § 300, 571 (9th ed 1916)) (emphasis in original). In determining whether the amount of the damages and starting date of the interest are ascertainable, we do not operate from the perspective of the parties during litigation but from an objective, post-judgment perspective. *Strader v. Grange Mutual Ins. Co.,* 179 Or App 329, 339, 39 P3d 903, *rev den,* 334 Or 190 (2002)."

*Id.* Prejudgment interest is appropriate, we have explained, " 'even though damages are not ascertainable until issues of fact have been decided[.]' " *Strader,* 179 Or App at 339 (quoting *Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto,* 129 Or App 206, 218, 879 P2d 193 (1994), *aff'd in part, rev'd in part,* 325 Or 46, 932 P2d 1141, *modified on recons,* 325 Or 46, 932 P2d 1142 (1997)).

 The question, then, reduces to whether Scott's damages were ascertainable on September 10, 2001. Scott maintains that they were: "Once the arbitrators resolved in Scott's favor the disputed facts not only as to whether money was due under the contract but also the amount due as of September 10, 2001, the amount due from September 10, 2001, forward was the same, subject only to setoff, which was readily ascertainable." M+W/Marshall responds that "there plainly was a dispute regarding whether damages were due Scott on the arbitration Award until the trial court determined whether M+W/M[arshall] was entitled to a judgment

that Scott's lien was invalid, and until the trial court determined whether M+W/M[arshall] therefore was entitled to attorney fees."

We agree with Scott that it was entitled to prejudgment interest as of September 10, 2001. Whether the amount of M+W/Marshall's attorney fees and the viability of the lien claim were ascertainable on that date is beside the point. The arbitrators had determined that $3,058,571.26 was due under Scott's contract and *quantum meruit* claims. Although, as of that date, it remained to be determined whether another claim—Scott's lien claim—was viable, that did not affect the fact that the arbitrators had awarded Scott over $3 million on the claims that went to arbitration. Similarly, the amount of attorney fees to which M+W/Marshall might ultimately be entitled did not affect the amount of damages that Scott had been awarded in the arbitration. In short, prejudgment interest is considered on a claim-by-claim basis. Because the exact amount of Scott's award was known on September 10, 2001, it was entitled to prejudgment interest from that date, rather than from December 18, 2001.[11]

Reversed and remanded for recalculation of award of prejudgment interest as of September 10, 2001; otherwise affirmed.

---

[11] As noted, M+W/Marshall asserts that, even if the trial court should have awarded those additional three months worth of prejudgment interest, the interest should be only on Scott's net recovery, *viz.*, $1,920,571.26, and not on the arbitration award of over $3 million. It is not immediately clear from the argument in Scott's opening brief whether it takes the position that it is entitled to the additional three months' worth of prejudgment interest on the full amount of the arbitration award or only on the net amount, following set-offs such as the attorney fees awarded to M+W/Marshall. Its argument reasonably can be read to be that it is entitled only to interest on the net amount. In its respondent's brief, M+W/Marshall asserts that "Scott appears to concede that even if it [is] entitled to prejudgment interest from September 10, 2001 to December 18, 2001, it is not entitled to prejudgment interest on the full amount of the Award." Although it filed a reply brief, Scott did not respond to that assertion, nor did it address it at oral argument. In light of the lack of clarity in Scott's opening brief and its failure to contradict M+W/Marshall's characterization of its argument—and the fact that Scott's argument objectively can be viewed as conceding the point—we treat it in the manner suggested by M+W/Marshall. Because Scott limits its argument on appeal to its claim for prejudgment interest on the "net" amount of the judgment, we do not address whether it was entitled to prejudgment interest on the full amount of the arbitration award.